### VIRGINIA BRIDGE & IRON CO. v. CAMP et al.

(District Court, S. D. Florida. April 14, 1924.)

No. 197.

1. **Contracts ⬤⟹242—Right to extension held waived by failure to demand extension in making supplemental contract.**

   Contractor, by entering into a supplemental contract with owner without demanding an extension of time for completion, because of delay for which he was not responsible, waived the right to extension.

2. **Contracts ⬤⟹294—Substantial compliance doctrine inapplicable to provision of contract entitling contractor to increased pay on completion before specified date.**

   Law of substantial compliance *held* inapplicable to provision of contract entitling contractor to increased pay on completion before specified date.

3. **Costs ⬤⟹42(8)—Defendants held liable for costs, where tender not made after suit begun.**

   Owner, who did not pay into registry of court, nor tender after commencement of suit, the amount adjudged due contractor in contractor's suit, *held* liable for costs, notwithstanding tender before suit.

In Equity. Suit by the Virginia Bridge & Iron Company against Clarence Camp and others. Decree for complainant.

C. M. Cooper, Chas. P. & J. J. G. Cooper, of Jacksonville, Fla., for complainant.

Anderson & Anderson, of Ocala, Fla., for defendants.

CALL, District Judge. Complainant filed its bill of complaint against the defendants, seeking recovery on three contracts for furnishing steel, and for constructing steel on a certain phosphate handling plant at Fernandina, Fla., and a lien on the land upon which the structure stands, under the statutes of Florida. The three contracts and the lien are set out as the basis for recovery. The first, called contract A, is dated December 4, 1919. This contract provides for

furnishing and erecting the structural steel work for the plant, including a shop coat of superior graphite paint before shipment and an additional coat after erection, also to furnish f. o. b. cars at factory, but not erect, the anchor bolts and sagrods supporting wood purlins, the work to be performed according to plans and specifications made a part of the contract. The price to be paid was 6½ cents per pound.

The second, called contract B, was entered into January 13, 1920, to furnish, but not erect, the structual steel work for a stationary loading tower, three track hoppers, including beams in connection thereto, and conveyor supports, as specified in a certain proposal, required in connection with the phosphate handling plant, f. o. b. cars at Roanoke, Va., according to certain plans and specifications made a part of the contract. The price agreed upon is 8½ cents per pound from date of final invoice. The times for performance of the acts by the owner and contractor were named in contract A.

On August 10, 1920, the two contracts A and B not having been performed according to the terms of each, the parties met and entered into a third contract, called C, and called a supplemental agreement, as follows:

### "Supplemental Agreement.

"Whereas, the Virginia Bridge & Iron Company, a corporation, of Roanoke, Virginia, referred to, for convenience, as the 'Bridge Company,' and C. & J. Camp, of Ocala, Florida, jointly and individually, referred to, for convenience, as the 'owner,' entered into an agreement, (a) dated December 4, 1919, wherein the Bridge Company, in consideration of certain payments to be made by the owner, obligated itself to furnish, deliver, and erect certain structural steel work as more specifically defined therein, and (b) dated January 13, 1920, wherein the Bridge Company, in consideration of certain payments to be made by the owner, obligated itself to furnish and deliver f. o. b. cars Roanoke, Virginia, freight allowed to Fernandina, Florida, certain structural steel work as more specifically defined therein; and whereas, subsequent difficulties have developed of a nature to prevent completion of the work within the time specified; and whereas, the owner now desires the Bridge Company to procure materials from other sources than originally contemplated, with a view of expediting delivery, and further to erect as well as furnish and deliver the steel work referred to in the agreement of January 13, 1920: Now, therefore. witnesseth that:

"Article I. For and in consideration of the additional payments to be made and obligations to be performed by the owner as hereinafter provided, the Bridge Company hereby agrees to erect, upon a site and foundations, together with ingress thereto and egress therefrom, furnished by the owner, the structural steel work to be furnished under the agreement of January 13, 1920.

"Article II. The Bridge Company agrees to conform to the following sequence in the fabrication and erection of materials furnished under the aforementioned agreement, viz.: First storage buildings; second, receiving end, commencing with the track hoppers; third, loading end. Erection of materials furnished under contract of January 13, 1920, to be performed during erection of the main structures, or immediately following, as conditions may warrant.

"Article III. The Bridge Company shall make immediate specific request for such additional data as is necessary for the preparation of its detail shop drawings and the efficient prosecution of the work covered by this agreement, and the owner agrees to deliver such lacking information to the Bridge Company not later than September 1, 1920.

"Article IV. The owner will complete and deliver to the Bridge Company ready for erection, the foundations for the storage buildings not later than September 20, 1920, and additional foundations at such time and in such man-

ner as will allow continuous and complete erection of all the steel work covered by this agreement, not later than December 1, 1920.

"Article V. Should the owner fail to provide the information referred to in article III, or deliver the foundations, within the time specified, then and in that event the Bridge Company shall be allowed an extension of time, for completion of the erection, equivalent to such delay in receipt of information, or foundations, provided the Bridge Company notifies the owner in writing at the time such delay occurs.

"Article VI. The Bridge Company agrees to complete the work covered by this agreement not later than December 1, 1920, with extension, if any, mutually agreed upon, for delays incident to articles III and IV. All other risks of delivering, due to strikes, transportation delays, etc., to be assumed by the Bridge Company.

"Article VII. The owner agrees that, if the Bridge Company shall well and faithfully fulfill this agreement, and the covenants herein contained, and faithfully fulfill same, then the owner hereby binds himself or itself, and heirs, successors, executors, administrators, or assigns, to pay to the Bridge Company in funds current at par in New York City, over and above the consideration stipulated in the aforementioned agreement of December 4, 1919, and January 13, 1920: (a) For completion December 1, 1919, or such extension of that date as may be mutually agreed upon, one and one-half cents ($0.015¢) per pound of material furnished, in addition to the prices and in the manner, specified in the above-mentioned agreements. If completion date, or extension of that date mutually agreed upon, is not adhered to by the Bridge Company, this provision is void and the prices specified in the original contracts shall apply, the owner retaining out of the final estimate, such increased cost as has been previously paid; and (b) for the erection of material furnished under contract dated January 13, 1920, cost plus ten per centum (10%), in which cost shall be included all pay rolls, foreman's salary, liability insurance, fuel and sundry supplies, together with a proportionate part of the cost of transporting men and equipment to and from the work and an arbitrary charge, not exceeding ten per cent. (10%) of the pay roll, for the use of tools and equipment. Payments to be made monthly to the amount of eighty per cent. (80%) of estimated value of work performed to date, with final estimate plus any retained percentage on completion.

"In witness whereof, the parties to these presents have duly executed this agreement in duplicate this 10th day of August, 1920.

            "Virginia Bridge & Iron Co.,
                "By [Signed] H. A. Davies, Contracting Engineer.
"Witness for Bridge Company:
    "[Signed]   J. C. Senter.
            "C. & J. Camp.
                "By [Signed] Jack Camp.
"Witness for Owner:
    "[Signed]   E. M. Jones."

These contracts were entered into on behalf of the owner by the Camps, and no point is made upon the complainants' right to a lien on the land upon which the structure is erected for the amount found to be due the complainant. The defendants, by an amendment to their answer, plead a mutual mistake in contract C and pray a reformation of same.

This is the first question presented for decision. Article IV of said contract as executed by the parties provides for the foundations for the storage buildings to be completed and delivered not later than September 20th. The claim of the defendants is that it should have been "foundations to be ready for erection to start storage bins September 20, 1920." I have examined the testimony, and considered the same with the law bearing upon the case, and find that the reformation asked in the amendment to the answer should not be granted.

The only question left in the case is: Has the complainant shown itself to be entitled to the extra compensation of 1½ cents per pound provided in the contract C? It is not denied. that the complainant is entitled to receive the compensation provided in contracts A and B.

There is no question but that the foundations for the storage bins were not complete for the erection of the steel on September 20th. Further conferences were had by the parties and finally an agreement was .reached, as shown by the letters exchanged, bearing dates September 28th and October 2d, by which the defendant agreed to substitute certain machinery for the locomotive crane, which it had expected to use in its erection work. No change was made in the date at which the work of the contractor was to have been completed, in order for it to claim the extra 1½ cents per pound. Contract C extends the time for completion of the work from the time set forth in contract A to December 1, 1920, and provides that the contractor shall erect the steel which was to be delivered under contract B. The contractor, by said contract C, assumes all' risks of delays except that the foundations are not in condition required by the contract. There is no issue between the parties on the delivery of data for shop drawings by September 1, 1920. No claim for delay ,is made on this ground. The claims of the complainant are, first, the foundations for the storage bins were not completed and delivered not later than September 20th; second, the site was not in condition shown in plans; and, third, complainant was delayed from November 2d to November 9th on account of the condition of a concrete slab intended to receive machinery; i. e., that this slab constituted an obstruction to the traveler being used to erect the steel. Written demand for this last extension was made.

Article V of contract C provides that an extension of time for the completion of the work equivalent to the delay in receipt of the foundations shall be granted, provided the complainants notify the owners in writing at the time such delays occur. The complainant agreed to complete the work not later than December 1st, with extension, if any, mutually agreed upon for delay in receipt of the foundations.

Article VII binds the owner, if the complainant faithfully fulfills the agreement, to pay it, over and above the prices provided in contracts A and B, for completion December 1, 1920, or such extension of that date as may be mutually agreed upon, 1½ cents per pound of material furnished. If completion date, or extension of that date mutually agreed upon, is not adhered to by the complainant, the provision for the payment of the additional 1½ cents per pound is void, and the prices in the contracts A and B shall apply.

The evidence shows that on September 20, 1920, the Bridge Company notified the defendants that the foundations were not completed in accordance with preliminary drawings, and the conditions on. the site were not such as to permit it to go on with the erection. As a result of this letter, the conference of the parties was had and the agreement evidenced by the letters of September 28th and October 2d reached. Work of erecting the steel then commenced on October 13th, and continued without interruption, except for the time between Novem-

ber 2d and November 9th (and during this time the workmen of the complainant were engaged in riveting the steel already erected, but the traveler was not used because of the location of the concrete slab, not a part of the foundation to be furnished for the erection of the steel by the complainant), until December 14th or 15th, when the complainant's workmen left the structure. It is therefore apparent that the structure was not completed by December 1st. It is further established by the testimony that no extension of time for completion was mutually agreed upon for delay in furnishing foundations.

[1] The complainant contends that it is entitled to an extension because the foundations for the storage bins were not completed and delivered by September 20th, and the delay caused by a change of machine for erection on account of the condition of the site. This claim cannot be allowed. The parties came together and agreed that certain things should be done by the owner and certain other things by the contractor to speed the work. No provision was made for any extension of time for the completion of the work was demanded or granted. If the complainant intended to rely upon an extension, then was the time to have demanded and agreed upon it.

The Supreme Court, in Ann R. Dermott v. Zepheniah Jones, 23 How. 220, 16 L. Ed. 442, say:

"It is also proved that the special contract had been departed from in the course of its execution; that the defendant insisted that alterations and additions should be made in the buildings after they were begun, contrary to the specifications of the special contract; and that the plaintiff had yielded to her requirements. It may have delayed the completion of the stores and warehouse, as it increased the work to be done; but, it having been assented to by the plaintiff without any stipulation that the time for performance of the whole was to be delayed, it must be presumed to have been undertaken by the plaintiff to be done, as to time, according to the original contract."

There are some expressions in the letters of complainant of October 2d which show that it considered the additional expense, etc., but no hint that any extension of time for completion was contemplated or desired. This is stronger than the case above quoted from, and if the principle therein stated is applied to the instant case, the delay from September 20th to October 13th cannot be considered in arriving at a decision herein. This leaves only the week from November 2d to November 9th, but the work was not completed until the 14th or 15th of December; therefore one week's delay, if the complainant was entitled to it, which is not decided, would not aid it in recovering the additional pay.

[2] It is contended by complainant that the work was substantially completed by December 1st, and therefore it is entitled to recover the increased pay. I do not understand that the law of substantial compliance applies to a case of this kind. As I view the case under the testimony, contract C conditionally promises to pay the increased price upon the completion of complainant's contract on or before December 1st, or such extension as should be mutually agreed upon. This was not done, and the complainant cannot recover the increased price, the condition not having been performed. It is not material to the decision of this case to determine whether the language of article VII

of contract C provides for a penalty or liquidated damages. As stated above, in my view it is a conditional promise.

The defendants claim an offset for use of the locomotive crane in constructing a bridge. This claim the complainant admits. A decree will be entered in favor of the complainant for the price of the steel as provided in contracts A and B, less the amount allowed as an offset, with interest at the rate of 8 per cent. from February 1, 1921.

[3] A New York draft for the amount claimed to be due by the defendants to complainant was sent it and refused, because it was to be accepted in full settlement. This money was not paid into the registry of the court, nor tender, made after suit brought, and I do not think the court would be justified in penalizing the complainant by making it pay the costs of this suit. The defendants could have by tender, after suit was brought, relieved themselves of all costs of suit incurred subsequent to such tender. This they did not do. The defendants will be condemned to pay the costs of this suit. ·