INTERSTATE BLDG. CORPORATION v. HILLIS et al.—66 S. W. (2d) 597.

Western Section. April 28, 1933.

Petition for Certiorari denied by Supreme Court, January 13, 1934.

172

Joseph Hanover, of Memphis, for appellant.
Wilson, Kyser, Armstrong & Allen, of Memphis, for appellees.

ANDERSON, J. This is a suit growing out of a written contract entered into on March 12, 1929, between the complainant, who is the appellant in this court, and the defendants, who are the appellees. Upon the face of the contract, the defendants agreed to sell, and the complainant agreed to purchase, a certain tract or tracts of land in Shelby county, estimated to contain about 50 acres. The price therefor was to be paid on the basis of $525 per acre for so much of the land as might be taken under the provisions of the contract. However, it is conceded that considered as a whole, the contract is not one of purchase and sale, but rather one whereby the complainant was to subdivide the property described into lots, lay out and grade certain streets, and to devote its entire time and best efforts to the sale of said lots for a period of ninety days, and in case all were not sold within that time, complainant was to have an additional ninety days from September 15, 1929, within which to continue the sale. Upon the property being laid off into lots, defendants were to indicate a cost price or release value on each lot, the aggregate of which amounts was to equal the agreed price of $525 per acre for the entire tract of land. All sales of lots were to be made on the basis of 10 per cent.

cash and the remainder to average not less than $10 on every fifty feet of frontage. Upon payment of one-half of the purchase price on each lot, defendants were to execute and deliver a deed to the purchaser. For its services, the complainant was to receive all of the cash payments made on the lots, and defendants were to receive one-half of the monthly payments until they had received for each lot the price fixed in the manner provided for in the contract as the cost or release value of each lot. It was specifically provided in the contract that "all unsold, forfeited or cancelled lots are to revert back to the first parties (defendants), and second party (complainant) is in no way obligated to pay for same."

The suit arises out of the following provision of the contract:

"As earnest money and in part payment of the purchase price of said property, second parties (complainant) have paid to F. W. Faxon, agent for the first parties (defendants) the sum of $1000.00, the receipt of which is hereby acknowledged. . . .

"The earnest money of $1000.00 will be credited to second parties on their payments on the lots when one-half of said lots have been sold. In the event second parties shall fail within the time allowed under this contract, to sell one-half of the lots, then this $1000.00 shall be retained by first parties (defendants) as additional price for the property.

"Second parties (complainant) upon the execution of this contract, approval of the title and deposit of $1000.00, are authorized to remove the building improvements from said land."

The complainant subdivided the property into 255 lots, laying out the necessary streets and making the necessary improvements in connection therewith as required by the contract. The defendants specified the so-called cost or release value of each lot on the basis provided for. At the expiration of the time limit, complainant demanded the credit or return of the $1000 deposit made by it, contending that it had sold a substantial number of lots in excess of the required number of one-half. The defendant declined to return the amount of the deposit referred to or to give the complainant credit therefor on the ground that complainant had not sold one-half of the lots within the time allowed by the contract.

Thereupon this bill was filed, seeking a decree against the defendants for said sum of $1,000, on the ground that the complainant had fully complied with all of the terms and conditions of the contract and had sold within the time allowed by the contract one-half of the number of lots into which said property had been divided. The defendants by their answer admitted the execution of the contract, but denied that the terms and conditions thereof had been complied with by the complainant and that one-half of said lots had been sold within

the time allowed by said contract, and denied that the complainant was entitled to have credited the earnest money of $1,000 or any part thereof, or to have it or any part thereof returned.

In the court below, the complainant's contention apparently was that it had sold within the time limit fixed by the contract a number substantially larger than one-half of the lots. The defendants contended that a substantial number of the sales alleged to have been made by complainant had been canceled prior to the expiration of the limit fixed in the contract, and that with such sales eliminated, the number of lots sold was less than one-half of the total number. There is no controversy about the total number of lots being 255. The chancellor found that bona fide, uncanceled sales of only 127 lots had been made within the time limit fixed by the contract, and that complainant having failed to show sales of one-half of the total number was not entitled to recover the amount deposited. He accordingly dismissed the bill, and complainant appealed.

The action of the chancellor in finding that only 127 lots had been sold within the time limit fixed by the contract is not challenged in this court. The only error assigned is predicated upon the action of the court in finding that the complainant did not sell one-half of the lots, it being contended that the sale of the number of lots found by the chancellor and conceded by the defendants to have been sold, constituted such a substantial compliance with the terms of the contract as to entitle complainant to recover the $1,000 deposit of earnest money.

In support of this assignment, it is insisted that the doctrine of substantial compliance is applicable to the provision of the contract in question and that the sale of the 127 lots, lacking but half of a lot of being one-half of the total number of lots, was a substantial compliance with the condition of the contract under which the deposit of earnest money was made.

"Substantial performance [of a contract] is said to exist 'where there has been no willful departure from the terms of the contract, and no omission in essential points, and it has been honestly and faithfully performed in its material and substantial particulars,' and the only variance from the strict and literal performance consists of 'technical or unimportant omissions or defects.'" Cotherman v. Oriental Oil Co. (Tex. Civ. App.), 272 S. W., 616, 619, citing, Page on Contracts, vol. 5, sec. 278.

However, it is insisted on behalf of the defendants that in invoking the rule of substantial compliance the complainant is laboring under a fundamental misapprehension of the nature of the rights and obligations assumed and imposed upon the parties to the contract involved. The clear and concise statement of the defendants' con-

tention to be found in the reply brief filed on behalf of the defendants cannot be improved upon. The contention is there stated as follows:

"Complainant never promised to sell one-half of the lots in the subdivision. The sale of one-half of the lots in the subdivision clearly appears from the contract to be not a promise on the part of complainant but an express condition precedent qualifying the obligation of defendants to make payment of or give credit for the $1,000.00. Defendants' only obligation with reference to the $1,000.00 is to give credit of that amount to complainant 'when one-half of said lots have been sold.' The contract expressly provides for the disposition of the $1,000.00 in the event complainant fails to comply with the express condition precedent:

"'In the event second parties shall fail, within the time allowed under this contract, to sell one-half of the lots, then this $1,000.00 shall be retained by first parties as additional price for the property.'

"This is the situation that is therefore presented by this contract: Complainant undertook to make sales of the lots in the subdivision which it was developing. For its services in making these sales it was to receive a fixed compensation. However, should it have sold within the time set by the contract one-half or more of the lots in the subdivision its compensation was to be increased by crediting it with the earnest money previously deposited by it. Complainant did not sell one-half of the lots. Therefore the condition precedent to any obligation on the part of defendants to make the credit never arose. On the other hand, the condition precedent to the retaining of the $1,000.00 by defendants has happened and defendants are clearly, by the terms of the contract, entitled to retain this money.

"The cases cited by complainant with reference to the doctrine of 'substantial performance' deal with situations where parties to a bilateral contract do not by express terms make performance of the contractual obligations of each party expressly conditional on performance by the other party. The law, however, by implication has made performance of one promise the condition of the performance of the other. Where full performance is not made by the party suing on the contract, nevertheless recovery is sometimes granted where denial of recovery would be inequitable and would serve to give to the defendant advantages which he should not retain without payment. However, if the promise of the plaintiff has not been fulfilled there arises a right of action on the part of the defendant against the plaintiff, and in that way complete justice may be done between the parties.

"In Tennesseee, however, the law operates to do justice in cases of the character we are now discussing,—not by enforcing the prom-

ise of the defendant and giving a right of action over to the defendant against the plaintiff, but by allowing the plaintiff to recover on a quantum meruit for the benefits conferred upon the defendant.''

There is authority of the highest rank for the rule that an express condition must be exactly fulfilled before the liability can arise on the promise which such condition qualifies. 2 Williston on Contracts, sec. 675.

However, it is also recognized that many courts have adopted a contrary rule in cases where the defendant can be compensated for failure to comply with the condition qualifying his obligation. As to this the author of the work on contracts above referred to says:

''In many jurisdictions it is held that even though an express condition is not complied with, a plaintiff who has substantially performed may recover the contract price promised for his performance, less whatever amount may be necessary to compensate the defendant for failure to comply with the condition qualifying his obligation. This is not an application of the principle de minimis non curat lex. Nowhere would a departure from full performance of a condition be regarded as important if the departure were an inconsiderable trifle having no pecuniary importance. But the principle in question recognized that the plaintiff's departure from full performance has been of such pecuniary consequence that the injury to the defendant must be deducted. This doctrine seems to have been adopted from the rule governing dependent promises where no express condition qualifies the promise of the defendant, and his only excuse is the failure of the plaintiff to perform his promise. In such a case if the plaintiff has substantially performed, the defendant is liable. But there no violation is done to the expressed intention of the parties as the defendant has not made his promise conditional on the plaintiff's performance, and any excuse he may have is given him by the law rather than from his own bargain. The obvious reason for enforcing the defendant's promise (where that is done) in spite of the plaintiff's failure to comply with an express condition is to avoid the forfeiture of the plaintiff's labor and materials which would be caused by a strict enforcement of the condition.'' 2 Williston on Contracts, sec. 675.

In the case of Pacific-Wyoming Oil Co. v. Carter Oil Co., 31 Wyo., 314, 226 P., 193, it is pointed out that substantial performance of a condition precedent sometimes means something distinctly short of full performance, in which case recoupment may be had for the part not performed, but in other cases means full performance according to the fair intent of the contract and a recovery is permitted without the recoupment.

In the case just referred to, the Supreme Court of Wyoming had

under consideration a contention by the defendant based on the rule that an express condition of a contract must be exactly fulfilled before the promisor can be held liable. After a review of the authorities dealing with the question, the court concluded that in the absence of a specific provision in the contract showing a contrary intention, the law considers a condition in a contract fully performed when the purpose evinced by the contract can be said to have been fairly carried out.

In the Maryland case of Presstman v. Fine, 162 Md., 133, 159 A., 265, the rule of literal compliance with an express condition precedent was invoked by the defendant, and the court held that a substantial compliance was sufficient where it appeared that the default on the part of the plaintiff was not intentional and was so trivial that it could be allowed for in fixing the amount of plaintiff's recovery.

The case of Virginia Bridge & Iron Co. v. Camp (D. C. S. D. Fla.), 298 F., 510, is cited by defendant as authority for the proposition that the doctrine of ''substantial performance'' has no application to the provision of a contract promising additional compensation to the promisee where such promise is qualified by an express condition. The Federal District Court in that case did so hold, but on an appeal the case was reversed by the Circuit Court of Appeals for the Fifth Circuit; the court expressly refraining from deciding that the rule of strict compliance applied by the District Court was applicable to the condition of the contract involved. Virginia Bridge & Iron Co. v. Camp et al., 11 F. (2d), 589.

Numerous cases are cited by complainant supporting the contention that while under the common law a strict performance was required as a condition precedent to a recovery on a contract, the modern rule requires only substantial performance. As to these authorities, it is insisted in the excellent brief filed on behalf of the defendants that they deal not with situations where the parties to a bilateral contract in express terms make performance of the contractual obligations of each party expressly conditional on performance by the other party, but with instances where the law by implication has made the performance of one promise the condition of the performance of the other. With reference to such cases, it has been said that the law itself having imposed the condition irrespective of the will of the parties, it can deal with its creation as it pleases, shaping the boundaries of the condition in such a way as to do justice and avoid hardship. 2 Williston on Contracts, sec. 669.

We are not unmindful of the distinction so clearly pointed out between the rule applicable to conditions precedent provided for by express terms of the contract and the rule applicable to conditions implied by law; but after all, this distinction as well as all others

is to be drawn subject always to the cardinal rule that the intention of the parties as disclosed by the terms of the contract must prevail. In this connection the observation of our Supreme Court in Officer v. Sims, 2 Hcisk., 505, is pertinent. In that case, it is said:

"The course of modern judicial opinion, in the interpretation of covenants, has been to resolve all other rules into one of intention. The artificial, and often subtle distinctions, upon the doctrine of mutual or concurrent covenants, or covenants with dependent or independent conditions, must all be subordinate at last to the rule of intention, the only infallible touchstone for the interpretation of contracts."

In the case of Carnes v. Apperson, 2 Sneed, 562, the court was confronted with the distinction to be drawn between conditions precedent and conditions subsequent, and with reference thereto said:

"We may observe, that every species of contract may be subject to conditions, by which an estate or interest may commence or be enlarged or be defeated. No technical words are necessary to create the condition, or declare its nature. Whether the contract be upon condition precedent or subsequent, are questions to be resolved by the *intention* and *understanding* of the parties, to be collected by carefully considering the *entire instrument*. The distinctions on this subject, says Mr. Kent, are extremely subtle and artificial, and the construction of a deed as to its operation and effect, will, after all, depend less upon artificial rules, than upon the application of good sense and sound equity to the object and spirit of the contract in the given case."

As we understand it, the defendants' contention is bottomed on the theory that upon the sale of one-half of the lots, complainant's compensation as fixed by the contract would be increased by the act of defendants in crediting complainant with the $1,000, deposited as earnest money; and an ingenious argument is made in the brief in support of this contention. We are unable to assent to this construction of the contract. Although it was deposited with the defendants, the $1,000 still belonged to the complainant. The contract fixed the basis upon which complainant was to be compensated for its services out of the proceeds of the sale of each lot. Complainant did not contract to sell one-half of the lots, but it did contract to devote its entire time and best efforts to the sale of the lots for the period fixed by the contract, and it is not contended that it did not do this. If the defendants had agreed to pay the complainant $1,000 from their own funds on condition that complainant sold one-half the lots within the time allowed, and that this amount was to be in addition to the other compensation fixed by the contract, an altogether different situation would be presented. But we are unable to see how it can

be said that the complainant would be additionally compensated by receiving credit with the defendants for a sum of money which already belonged to it and with the title to which it had never parted.

It is insisted that the obligation of defendants with respect to the $1,000 was to credit complainant with this sum only on condition that one-half the lots were sold within the time allowed by the contract. The fallacy of this contention lies in the fact that the $1,000 already belonged to the complainant. It did not require performance by the defendants of any obligation imposed upon them by the contract to make the money the property of the complainant. As stated, it already belonged to the complainant and the rights of the defendants with respect thereto depended solely on whether or not and to what extent complainant complied with provisions of the contract under which it was deposited with the defendants.

As we construe the contract, there was no agreement upon the defendants' part with respect to this deposit of money that was qualified by the condition that the complainant sell one-half of the lots within the time specified. A change in the right and title to the fund did not depend to any extent upon the performance of any obligation imposed upon them by the contract. Upon the other hand, we are of the opinion that the real purpose and intention of the parties with reference to the deposit of this fund was that it should be in the nature of security for the good faith of the complainant in carrying out its obligations under the contract to subdivide the property into lots, promote the sale thereof, and make the improvements required by the contract. It is conceded that the contract was not a contract of purchase and sale. Hence the provision of the contract providing for the application of the deposit of $1,000 to the purchase price of the property can be given no effect in construing the contract and arriving at the intention of the parties. With this part of the contract eliminated from consideration, it is clearly apparent that the deposit was required and made as evidence of the good faith of the complainant. In fact in the brief and argument filed on behalf of the defendants it is stated that the $1,000 was deposited by the complainant with the defendants as evidence of the complainant's earnestness in promoting the sales of the lots.

What, then, was the effect of this provision of the contract with the part indicated eliminated from consideration? The answer to this question is obvious. If the complainant failed to sell one-half of the lots within the time specified, the deposit was to be forfeited to the defendants. So far as the principles of law applicable thereto are concerned, the deposit of the money under such an agreement was equivalent to giving a bond in the penalty of $1,000 to be void on condition that the complainant sold one-half of the lots within the

time specified. With regard to such agreements, the author of Williston on Contracts has this to say:

"Instead of providing in an executory contract for the payment of a liquidated sum, an actual payment may be made in order to secure performance. The situation here is rather analogous to that of a mortgage than to that of an executory agreement for a penalty. The principles, however, for governing the case are analogous to those applied in the case of executory penalties. If the deposit is unreasonable in amount and the actual damage will be negligible or capable of actual measurement, the forfeiture of the deposit will not be permitted even though this is expressly agreed." 2 Williston on Contracts, sec. 790.

A construction of the contract such as that indicated is altogether reasonable when the situation of the parties and the primary object and purpose of the instrument are considered in connection with its express terms and provisions. Complainant was a corporation. What its financial standing and reputation was does not appear. However, it does appear that at the time the contract was entered into defendants did not hold title to 32 acres of the total number of 51 acres that were to be included in the subdivision. This 32-acre tract was designated in the contract as the Pointer tract. By the terms of the contract the defendants agreed to endeavor to purchase the Pointer tract and it was provided that in the event they were unable to do so, or in the event that the title thereto should be proven defective, the deposit of the $1,000 earnest money should be returned to the complainant. The defendants were also to have prepared and furnish at their expense abstracts of the title to all of the property. In addition, there were apparently some building improvements on the land which had to be removed by complainant in subdividing the property into lots and which were to be removed only upon the deposit of the earnest money. It was therefore both natural and reasonable that the defendants desired some assurance of the good faith of the complainants with respect to its obligations under the contract before they purchased the 32 acres known as the Pointer tract, permitted the removal of the buildings on the property, and incurred the expense incident to having prepared the abstracts of title. That such assurance took the form of a deposit by complainant of the sum of $1,000 is also natural and not at all unusual. The standard by which the good faith of the complainant was to be measured was whether or not it succeeded within the time limit fixed in selling one-half of the lots, the total number of which was later to be determined.

As we view the case, in its proper analysis the question involved is this: Whether a court of equity will permit the forfeiture of the sum deposited under the circumstances indicated.

In Pomeroy's Equity Jurisprudence (4 Ed.), vol. 1, sec. 450, it is said:

"In the absence of special circumstances giving a defaulting party a higher remedial right, a court of equity will set aside or otherwise relieve against a forfeiture, both when it is incurred on the breach of an agreement expressly and simply for the payment of money, and also on the breach of an agreement of which the obligation, although indirectly, is yet substantially a pecuniary one."

With reference to penalties and forfeitures and the equity doctrine applicable thereto, in the same treatise, it is said:

"Wherever a penalty or a forfeiture is used merely to secure the payment of a debt or the performance of some act or the enjoyment of some right or benefit, equity considering the payment or performance or enjoyment to be the real thing intended by the agreement, and the penalty or forfeiture to be only an accessory, will relieve against such penalty or forfeiture by awarding compensation instead thereof proportionate to the damages actually resulting from the non-payment, or non-performance, or non-enjoyment, according to the stipulation of the agreement." Pomeroy's Equity Jurisprudence (4 Ed.), vol. 1, sec. 433.

In the instant case the real object of the contract was to subdivide the property, improve it by laying out and graveling streets, and to sell the lots, all of which the complainant was obligated to do. The agreement under which the $1,000 was deposited with the defendants was only accessory to the primary purpose of the parties. It is conceded that the complainant sold 127 of the total number of 255 lots. There is no evidence to indicate, and we do not understand it to be contended, that the complainant did not in good faith use its best efforts to sell as many of the lots as possible. In fact, it is apparent that the complainant's representatives who were in charge of its business really thought that a number of lots substantially in excess of one-half of the total number had been sold within the time limit provided by the contract. The number conceded to have been sold is within a fraction of a lot of being a strict and literal compliance with the provision of the contract under which the deposit of the earnest money was made. The defendants do not plead in the answer that they were damaged by the failure of the complainant to effect the sales of 128 lots instead of 127, nor is there anything in the evidence to indicate that they sustained any damage on this account. So far as the record discloses, the unsold lots are as valuable as they ever were. The defendants have received and are enjoying the benefits of the efforts employed by the complainant in selling the number of lots found to have been sold. They are still collecting the deferred payments on these lots. When the time limit fixed by the contract

expired, the complainant apparently had prospective customers for a number of lots. It desired to continue its efforts to make the sales thereof, but the contract period having ended, its right to do so was gone. What then was the condition of defendants when the time limit expired? As a result of the complainant's efforts and without expense on their part, the property had been subdivided, the streets laid out and graveled, and for 127 of the total number of 255 lots they had received or were to receive from the purchasers, the price they themselves had fixed thereon. They also had a clear title to the remaining 128 lots. Complainant had no interest in the unsold lots and no right to attempt to sell any of them. Its opportunity to derive any benefit from the sale thereof was gone. As to these unsold lots all of the time and money expended by it in connection with the sales campaign was lost and defendant received the benefit thereof with no cost to them. So far as the record discloses, the unsold lots are still worth the price fixed on them by the defendants. There is nothing whatever in the record to indicate that they are any less valuable than they were at the time the contract was entered into. In the absence of any showing to the contrary, it is not unreasonable to presume that the value of these lots has been enhanced by the fact that 127 lots in the same subdivision have already been sold.

The cost prices or release values fixed on the lots by defendants under the terms of the contract ranged from $30 to $300 per lot. By purchasing one of the $30 lots, before the time limit expired, the complainant could have raised the number of lots sold from 127 to 128 and thus insured the return of its deposit of $1,000. To what extent then have the defendants been damaged by the failure of the complainants to sell within the time allowed one more lot? If the course indicated had been pursued by the complainant, then, instead of one of the lots the defendants now own, they would have received the sum of $30. If their contention in this lawsuit is sustained, instead of the $30 for this lot they will have in effect received $1,000 and still own the lot; and this in addition to whatever profit they have made on the lots actually sold as a result of the complainant's efforts and the enhancement in value, if any, which resulted to the unsold lots by virtue of the fact that the property has been subdivided, streets laid off and improved, and practically one-half of the lots in the project sold.

We are of the opinion that the purpose of the parties to the contract has been fairly carried out and that the condition under which the $1,000 was deposited has been performed to the extent required by law. The default, on the part of complainant, if such it be considered, was unintentional and of no pecuniary importance. No damage to defendants is shown to have resulted therefrom. Under

these circumstances equity will not permit the forfeiture of the complainant's money to defendants. Lusk Lumber Co. v. Ind. Producers Consolidated, 35 Wyo., 381, 249 P., 790, 793; Johnson v. Meyers, 91 Or., 179, 177 P., 631; Heatwole v. Gorrell, 35 Kan., 692, 12 P., 135; Evans v. Moseley, 84 Kan., 322, 114 P., 374, 50 L. R. A. (N. S.), 889; Stump and Cox v. Estill, Peck, 175; Elliott v. Wilkinson, 8 Yerg. (16 Tenn.), 411; Porter v. Woods, 3 Humph. (22 Tenn.), 56, 39 Am. Dec., 153; Pomeroy's Equity Jur., vol. 1, sec. 451, p. 756.

The chancellor was in error in denying the complainant a recovery and in dismissing the bill. His decree is therefore reversed, and a decree will be entered here in favor of th complainant and against the defendants for the sum of $1,000 and the costs of the cause.

Heiskell, J., concurs; Senter, J., dissents.