**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff/Appellee,**

v.

**THIRD NATIONAL BANK IN NASHVILLE, Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 21, 1991.

Permission to Appeal Denied by Supreme Court June 10, 1991.

Paul R. White, Rutherford, DeMarco & White, Nashville, for defendant/appellant.

William Thomas McHugh, Todd E. Panther, Tune, Entrekin & White, Nashville, for plaintiff/appellee.

## OPINION

CANTRELL, Judge.

This is a dispute over who has a prior security interest in a 1989 GMC pickup. The combatants are General Motors Acceptance Corporation, the inventory financer of a GMC dealer, and Third National Bank in Nashville, the purchaser of chattel paper covering the pickup. The primary question is whether a sale actually took place. Once that threshold is crossed the question becomes one of priority when the truck was returned to the dealer. The lower court resolved the question in favor of GMAC. For the reasons set forth in this opinion, we reverse.

GMAC held a security interest in the inventory of Richard Smith, Inc., a Dickson County GMC dealer. On December 1, 1989, Karen Russell signed a retail installment sales contract at Richard Smith in which she agreed to purchase a 1989 GMC pickup truck. She had driven the truck for a few days trial period. The contract called for a $4,000.00 down payment which Ms. Russell proposed to borrow from her father. In lieu of the down payment, the dealer took her promissory note for $4,000.00 payable on December 5, 1989. As part of the same transaction, Ms. Russell also signed the usual and customary documents required to finance the purchase of the truck over a period of five years. Ms. Russell says the dealer promised to hold the papers until she came back with the down payment.

On December 4, 1989, the dealer assigned the contract to Third National Bank in Nashville and filed an application for title with the County Clerk of Dickson County. The application contained a manufacturer's statement of origin and noted that Third National Bank had a lien on the truck. In due course the documents were

forwarded to the Motor Vehicle Division of the Tennessee Department of Revenue.

Approximately two weeks later, Ms. Russell decided she could not come up with the $4,000.00 down payment. She returned the truck to the dealer and obtained a promise that the transaction would be voided if she could retrieve the manufacturer's statement of origin from the county clerk. Ms. Russell, with the aid of the county clerk, managed to recall the documents from the Department of Revenue. Someone at the dealer wrote "Void" on the face of the dealer's copy of the retail installment sales contract. The original, however, had been transferred to Third National Bank.

Shortly after the dealer's transaction with Ms. Russell, GMAC discovered that the dealer had made other sales out of inventory without making the required payment to GMAC. The dealer being seriously "out of trust", GMAC took possession of the dealer's inventory including the vehicle formerly possessed by Ms. Russell.

The trial judge held that since the title did not vest in the purchaser, Third National Bank's lien did not attach to the vehicle.

### A.

We are of the opinion that the result in this case hinges on the answer to the question, "Did the dealer sell the truck to a buyer in the ordinary course of business?" If the answer to that question is yes, the applicable provisions of the Uniform Commercial Code dictate a result favorable to the bank.

A buyer in the ordinary course of business means,

> "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of the third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of the money debt;"....

Tenn.Code Ann. § 47–1–201(9).

▮ If Ms. Russell was in fact a buyer, she is a perfect example of a buyer in the ordinary course of business. In an ordinary transaction of purchase and sale, she bought the truck out of the dealer's inventory, and paid the purchase price by secured and unsecured credit. Did Ms. Russell in fact buy the truck? We believe she did. She signed a contract agreeing to purchase the truck and to pay for it in installments; she signed a power of attorney allowing the dealer to secure for her the certificate of title from the state; she signed a promissory note for the down payment and took possession of the truck.

▮ GMAC argues, however, that the contract was subject to a condition precedent, the ability of Ms. Russell to obtain the down payment. The cases in Tennessee and elsewhere recognize that noncompliance with a condition precedent will prevent the formation of a contract. *Interstate Building Corp. v. Hillis*, 17 Tenn. App. 171, 66 S.W.2d 597 (1933). *See also* 17A C.J.S. *Contracts* § 338. Such conditions may be shown by parol evidence. *Gibson County v. Fourth and First National Bank*, 20 Tenn.App. 168, 96 S.W.2d 184 (1936).

We are persuaded, however, that the record does not establish that the ability to raise the $4,000.00 down payment was a condition precedent to the contract between Ms. Russell and the dealer. The written agreement does not contain any language to that effect. It merely reflects that she is obligated to make a $4,000.00 down payment. In addition, Ms. Russell testified that after she signed the contract and the other papers, the following conversation took place:

A Right. That's why I told him that night as soon as I got through signing them I thought about it, you know. I didn't get up or anything like that. I said, I said, We need to hold off on this because I still haven't even talked to my father yet about the down payment.

He said, Well,—I asked him for the papers back. I did. He said, There's no sense in this. We'll just hold on to this until you bring me money. I won't do anything with it.

Q  Can you identify that document?

A  That's a promissory note.

Q  A promissory note for how much money?

A  $4,000.

Q  Signed by whom?

A  Me.

Q  And agreeing to pay the money to whom?

A  Richard Smith.

Q  What was the purpose in signing that document?

A  After I told him that he said, Would you sign a promissory note?

And I said, Well, I don't know that I can come up with the money.

He said, Well, it's just to make sure. Earnest or something. You know, he used some kind of phrase I didn't understand.

And I said, Well, I said, yeah. Because I was—I had thought I was going to get the money.

We think it is clear from this testimony that when Ms. Russell expressed a concern about the down payment she agreed to sign the note instead. At that point the sale was complete. The additional testimony about the dealer agreeing to hold the papers for a few days shows, at most, an agreement to rescind the sale if Ms. Russell could not pay the note. However, by the time the attempted rescission took place, other interests had intervened.

### B.

■ First, as a consequence of the sale to Ms. Russell, GMAC lost its original security interest in the vehicle. A buyer in the ordinary course of business "takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." Tenn.Code Ann. § 47-9-307(1). A dealer selling his inventory to a buyer in the ordinary course of business has the power to pass good title to the buyer. If this were not true any plan of inventory financing would clog the exchange of goods between the seller and the buyer.

■ Then we must ask ourselves: Between the inventory financer and the transferee of chattel paper covering the goods sold out of inventory, who has priority when the goods are returned to the dealer? We think the Uniform Commercial Code resolves this question in favor of the bank. The retail installment sale contract signed by Ms. Russell was "chattel paper" as defined in Tenn.Code Ann. § 47-9-105(1)(b). Since GMAC had a perfected security interest in the proceeds of the sales from the dealer's inventory, the security interest continued in the chattel paper, Tenn.Code Ann. § 47-9-306(3). However, the bank as purchaser of the chattel paper took priority over a security interest in the chattel paper "which [was] claimed merely as proceeds of inventory subject to a security interest." Tenn.Code Ann. § 47-9-308(b). The priority of interest in the chattel paper becomes crucial because Tenn.Code Ann. § 47-9-306(5) provides:

(5) If a sale of goods results in an account or chattel paper which is transferred by the seller to a secured party, and if the goods are returned to or are repossessed by the seller or the secured party, the following rules determine priorities:

(a) If the goods were collateral at the time of sale for an indebtedness of the seller which is still unpaid, the original security interest attaches again to the goods and continues as a perfected security interest if it was perfected at the time when the goods were sold. If the security interest was originally perfected by a filing which is still effective, noting further is required to continue the perfected status; in any other case, the secured party must take possession of the returned or repossessed goods or must file.

(b) *An unpaid transferee of the chattel paper has a security interest in the goods against the transferor.*

*Such security interest is prior to a security interest asserted under paragraph (a) to the extent that the transferee of the chattel paper was entitled to priority under § 47–9–308.* (Emphasis supplied)

Thus, where an unpaid transferee of chattel paper meets the requirements of Tenn.Code Ann. § 47–9–308(b), the Code gives the transferee priority over an inventory financer when the goods are returned to the dealer after the sale.

■ To the extent that perfection of the bank's interest in the vehicle is important, we hold that the bank's interest was perfected when the application for a title showing the bank's lien was lodged with the County Clerk of Dickson County. *See* Tenn.Code Ann. § 55–3–126. That event occurred on or before December 8, 1989.

The judgment of the court below is reversed and the appellant Third National Bank is granted the right to possession of the vehicle in question. The cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee.

TODD, P.J., and KOCH, J., concur.