**TRANSOUTH FINANCIAL CORPORATION, Plaintiff–Appellee,**

v.

**GENERAL ELECTRIC CAPITAL CORPORATION, et al., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section.

Jan. 24, 1992.

Permission to Appeal Denied by Supreme Court May 4, 1992.

Raymond E. Lacy and Walter N. Winchester with Lacy & Winchester, Knoxville, for defendants-appellants.

David A. Lufkin and Thomas R. Henley, Knoxville, for plaintiff-appellee.

OPINION

SANDERS, Presiding Judge (Eastern Section).

The Defendant has appealed from a summary judgment for the Plaintiff in a suit to determine the priority of the lien-holders on four mobile homes.

Mobile Home Sales Incorporated (MHS) was a mobile home dealer engaged in the business of selling mobile homes in Knox County in 1986 through 1989. General Electric Capital Corporation (GECC) was the inventory financier of MHS and held a lien on its inventory. Transouth Financial Corporation (Transouth) financed the mobile homes sold by MHS at retail. As pertinent here, in 1986 and 1988 MHS sold four mobile homes to customers which

were financed by Transouth and it perfected its liens by having its liens registered on the titles of the mobile homes pursuant to T.C.A. § 55–1–101, et seq.

The purchasers of the four mobile homes defaulted and the homes were repossessed by MHS. They were on MHS's lot for refurbishing and sale in December, 1989, when MHS went out of business. GECC repossessed all of MHS's inventory, including the four mobile homes, on which Transouth had liens, and that precipitated this litigation.

The trial court granted a summary judgment in favor of Transouth and GECC appealed, contending that genuine issues of material facts existed which precluded summary judgment. After a review of the record, we disagree, and affirm.

Under the parties' Inventory Agreement of May, 1986, GECC loaned MHS funds to purchase mobile homes and, in return, GECC acquired a secured interest in all of MHS's inventory, specifically: "All of Dealer's (MHS's) inventory, wherever located, whether new, used, or repossessed,... general intangibles, chattel paper, and books and records, and any such property returned to or repossessed by or on behalf of Dealer, including such of the same as may be after-acquired property, and any and all accessions to, substitutions for, products and proceeds of the foregoing."

GECC filed a UCC–1 financing statement with the Tennessee Secretary of State in January, 1985. The UCC–1 was amended on May 6, 1986, reflecting a change in the name of MHS and changing GECC's address. A continuation statement relating to the UCC–1 was filed on November 28, 1989.

In January, 1986, MHS and Transouth entered into a Repurchase Agreement. Under the Repurchase Agreement, MHS assigned to Transouth the chattel paper acquired by MHS from retail purchasers. In essence, Transouth financed individual purchases of the mobile homes. Transouth would then record their lien on the individual purchaser's title. Under the agreement, MHS was required to repurchase from Transouth, on demand, any repossessed chattel. If MHS failed to repurchase the chattel, then Transouth could sell it and seek the deficiency from MHS. The Agreement further provided: "If [MHS] takes possession of such chattel before such payment, it shall be at our risk and expense and will be delivered to you upon demand. .... [Transouth] shall have the right to store on our premises without cost to you chattels covered by the contracts and while thus stored, [MHS] shall be the bailee of the chattels and shall exercise reasonable care in the safekeeping and preservation of the chattels."

In the course of dealing between the parties, MHS would repossess any mobile home in default for Transouth. The home would then be placed on MHS's sales lot for resale. Between April, 1986, and October, 1988, MHS sold and then repossessed four mobile homes from individual purchasers for Transouth under the Repurchase Agreement. While on the lot, MHS paid the monthly installments due Transouth in the names of the individual purchasers. The record does not reveal when the homes were repossessed but they were on MHS's sales lot in early December, 1989, when MHS failed. GECC repossessed MHS's entire inventory, including the four mobile homes Transouth had financed under the Repurchase Agreement.

The Appellant contends the ownership of the mobile homes is the decisive issue which must be determined at a trial on the merits. We disagree. Transouth has priority over GECC regardless of whether Transouth, MHS, or the individual mobile home buyers are the owners.

Priority between two secured creditors of a repossessed or returned chattel is governed by the Uniform Commercial Code Section 9–306(5)(b), codified in Tennessee as T.C.A. § 47–9–306(5)(b). Under that section, an "unpaid transferee of chattel paper" has priority over the security interest of an inventory financier (*See* subsection (a) and (b) in conjunction with § 47–9–308.) The reasoning behind this priority scheme is concisely stated in *General Motors v. Third National Bank*, 812 S.W.2d 593 (Tenn.App.1991). There, General Motors was the inventory financier for a GMC

dealer. Third National Bank purchased the chattel paper covering a certain pickup truck. The pickup truck was returned to the dealer by the purchaser. Because the dealer was "out of trust" with General Motors, it repossessed the dealer's entire inventory, including the pickup which Third National financed. The court held that, after the initial sale of the pickup to the individual purchaser, General Motors lost its original security interest in the vehicle. Section 47–9–307(1). *Id.* at 596. In construing 47–9–306(5)(b) and 47–9–308 together, the court concluded Third National Bank had priority over General Motors because the chattel paper was "claimed [by General Motors] merely as proceeds of inventory subject to a security interest. T.C.A. 47–9–308(b)." *Id.* at 596.

To be protected under § 47–9–306(5)(b), the unpaid transferee of chattel paper must perfect its lien. T.C.A. § 47–9–306(5)(d). GECC relies on the comment to that section to support its contention that Transouth had to either take possession of the homes or refile its liens. The comment provides: "... the [chattel paper holder], under subsection (5)(d), must perfect its interest by taking possession of the car or by filing as to it. Perfection of his original interest in the chattel paper or the account does not automatically carry over to the returned car...." Filing, however, is not always required. The provision itself merely requires that the interest "be perfected." § 47–9–306(5)(d). Moreover, filing in this instance is not required under § 47–9–302(3)(b):

> The filing of a financing statement otherwise required by this chapter is not necessary or effective to perfect a security interest in property subject to: ... (b) statutes of this state which provide for central filing of, or which require indication on a certificate of title of such security interests in such property....

The mobile homes were subject to Sections 55–1–101, *et seq. Bank of Commerce v. Waddell,* 731 S.W.2d 61, 63 (Tenn.App. 1987). Transouth had perfected its title lien under T.C.A. § 55–3–126, so no further filing was required.

The Appellant next contends that, since T.C.A. § 47–9–306(5) applies only to

security interests and because Transouth is the owner of the chattel, it could protect its interest only under the consignment statute, T.C.A. § 47–2–326.

The consignment statute, T.C.A. § 47–2–326, provides that goods held on consignment are subject to the claims of the debtor's creditors. Section 47–2–326(2). This gives the debtor's creditors priority over chattel paper holders. *See* Comment 2, § 47–2–326. However, this priority does not apply if the consignor "[3](c) complies with the filing provisions of the chapter on Secured Transactions (chapter 9 of this title)."

The chapter on Secured Transactions specifically exempts this title lien holder from the filing provisions. Section 47–9–302(3). Therefore, Transouth has priority over Appellant regardless of whether it had only a security interest or an ownership interest and a security interest in the homes.

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellant. The case is remanded to the trial court for any further necessary proceedings.

LEWIS and McMURRAY, JJ., concur.