**In re Johnny SKINNER, Chrystal N. Skinner, Debtors.**

**Johnny C. Skinner, Chrystal N. Skinner, Plaintiffs,**

v.

**Cumberland Auto Center, Defendant.**

**Bankruptcy No. 2:99–02817.
Adversary No. 2:99–0212.**

United States Bankruptcy Court, M.D. Tennessee.

Aug. 20, 1999.

James A. Flexer, Nashville, Tennessee, for Debtors.

T. Michael O'Mara, O'Mara & Johnson, Cookeville, Tennessee, for Cumberland Chrysler Center, Inc.

## MEMORANDUM

R. THOMAS STINNETT, Bankruptcy Judge.

■ Now before the court is the debtor's complaint against Cumberland Chrysler Center (Cumberland). Cumberland is a car dealer. Before the debtor filed his Chapter 13 case, he attempted to buy and Cumberland attempted to sell him a used 1997 Jeep Grand Cherokee. Cumberland took the car back after the debtor filed Chapter 13. Cumberland did not ask the court for relief from the automatic stay before taking the car. 11 U.S.C. § 362. The complaint alleges that Cumberland had notice of the debtor's Chapter 13 filing before it took the car. The complaint asks the court to impose sanctions on Cumberland for willful violation of the automatic stay. 11 U.S.C. § 362(h).

The complaint also asks the court to order Cumberland to turn the car over to the debtor. In this regard, the complaint alleges that the debtor has a confirmed Chapter 13 plan which provides for Cumberland as an unsecured creditor because its proof of claim did not show that it had a perfected security interest. The complaint also alleges that the car is necessary for the debtor to be able to carry out the plan.

■ The debtor and Cumberland executed a document titled "Buyer's Order" (the purchase order). It contains all the terms needed to make a sales contract. It identifies the buyer and the seller. It identifies the vehicle to be sold by make, model, color, stock number, vehicle identification number, and mileage. It sets the price. It is signed by the buyer. Someone initialed the form on behalf of the dealer in the "accepted by" blank. It contains a warranty disclaimer, which is typical of sale contracts. It does not include the exact terms of payment, but it provides for the situation in which the terms are not yet definite because the buyer must obtain financing. This lack of definiteness in the payment terms does not prevent the formation of a contract. *Tenn.Code Ann.* § 47–2–204.

Both Cumberland and the debtor understood that the debtor's purchase of the vehicle depended on whether he could obtain financing. On the front of the order, in the space for setting out the selling price, there is stamped in large letters "SUBJECT TO CREDIT APPROVAL."

The purchase order also includes the following terms directly above the signature lines:

THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY THE DEALER OR HIS AUTHORIZED REPRESENTATIVE AND IN THE EVENT OF A TIME SALE, THIS ORDER SHALL NOT BECOME BINDING UNTIL APPROVAL OF THE TERMS HEREOF IS GIVEN BY A BANK OR A FINANCE COMPANY WILLING TO PURCHASE A RETAIL INSTALLMENT CONTRACT BETWEEN THE PARTIES HERETO BASED ON SUCH TERMS.

Paragraph 10 on the back of the form provides: "The Purchaser, before or at the time of delivery of the motor vehicle covered by this Order will execute such forms of agreement or documents as may be required by the terms and conditions of payment indicated on the front of this Order." This provision seems to require the debtor to execute payment documents and agreements before delivery of the car. This is not the same as requiring financing before delivery of the car. The evidence includes a retail installment sale contract and security agreement signed by the debtor and dated the same day as the purchase order. The debtor's execution of this installment contract apparently satisfied the condition. Cumberland delivered the car immediately, and the debtor kept it until Cumberland took it back after the debtor filed Chapter 13.

The evidence includes rejections from several potential lenders. The last rejection is dated March 27, 1999. The evidence also includes a letter from WFS Financial to the debtor. The letter states that financing was approved on different terms, but the counteroffer was rejected. It is not clear who rejected the different terms—the debtor or Cumberland. The letter is dated April 20, 1999. The debtor filed Chapter 13 on March 31, 1999.

The purchase order does not contain any specific limit on the time allowed the debtor to obtain financing. Without such a specific limit, the debtor had a reasonable time. Furthermore, Cumberland apparently could terminate the contract, and end the debtor's time to obtain financing, only by giving notice. *Tenn. Code Ann.* § 47–2–106(3) (definition of termination); *Tenn.Code Ann.* § 47–2–309(1), (3). The length of a reasonable time depends on the circumstances of the particular case. *Tenn.Code Ann.* § 47–2–309, Official Comment 1; *Tenn.Code Ann.* § 47–1–204(2); *Calcasieu Paper Co. v. Memphis Paper Co.,* 32 Tenn.App. 293, 222 S.W.2d 617 (1949).

A witness for Cumberland testified that he told the debtor, before the debtor filed Chapter 13, that financing would not be approved on the terms of the executed installment contract and the debtor would be required to make a down payment before he could obtain financing. The debtor denied that he was told this. According to the debtor, he and Cumberland were still discussing financing when he filed Chapter 13 and continued to discuss it afterward.

The rejection dated March 27, 1999, which was only four days before the debtor filed Chapter 13, supports the debtor's testimony. The letter from WFS Financial, which was dated about three weeks after the debtor filed Chapter 13, also supports the debtor's testimony. The court finds that Cumberland did not attempt to terminate the time for obtaining financing before the debtor filed Chapter 13.

Furthermore, the purchase order did not require the debtor to obtain financing on the terms set out in the executed installment contract. The purchase order only required an installment contract that Cumberland could sell to a bank or finance company. Even if Cumberland did notify the debtor that the executed installment contract could not be sold, that did not amount to cutting off the time allowed to obtain financing and terminating the purchase order.

In summary, the evidence does not show that before the debtor's Chapter 13, the purchase order contract had been either abandoned by the parties or terminated by

Cumberland because financing could not be obtained within a reasonable time. The evidence also does not show that a reasonable time for obtaining financing had expired before the debtor filed Chapter 13.

■ When the debtor filed Chapter 13, he still had rights under the purchase order, but what were his rights? The *McFarland* case from the Eastern District of Tennessee involved similar facts. Judge Cook held that the debtor had a special property and insurable interest in the vehicle *before* financing was obtained. A buyer obtains a special property and insurable interest in property when it is identified as the subject of a sale contract. *Tenn.Code Ann.* § 47–2–501(1). Judge Cook reasoned that the purchase order was a sale contract despite the condition precedent that financing be obtained. Judge Jarvis reversed. He held that the vehicle was not identified to any sale contract until financing was obtained because only then did the purchase order become a sale contract. Judge Jarvis concluded that the debtor had only bare possession up to that point since the contract also did not even give the debtor the right to possession before financing was obtained. *Weaver v. Ford Motor Credit Co. (In re McFarland)*, 112 B.R. 906 (Bankr.E.D.Tenn.1990) *rev'd* 131 B.R. 627 (E.D.Tenn.1990) *aff'd* 943 F.2d 52, 1991 WL 175279 (6th Cir. 1991) (Table).

The courts in *McFarland* were attempting to decide when the financer's security interest attached. As to the automatic stay, this court is concerned with a different question. Did the debtor have an interest protected by the automatic stay at the time he filed Chapter 13?

The purchase order may not have been a sale contract, but it was a contract of some kind. Unlike the contract in *McFarland*, the purchase order allows the debtor possession of the car before obtaining financing. Moreover, the purchase order had not been abandoned or terminated, and the time for obtaining financing had not expired. Thus, when the debtor filed Chapter 13, he had possession of the car pursuant to his contract with Cumberland, and the contract still allowed the opportunity to obtain financing and complete the deal.

The filing of the debtor's Chapter 13 petition created the bankruptcy estate. The debtor's rights under the purchase order came into the bankruptcy estate. The automatic stay protected the car from seizure by Cumberland in order to protect the debtor's contract rights that came into the bankruptcy estate. 11 U.S.C. §§ 541(a) & 362(a)(3); *see, e.g., Mumpfield v. Leavell (In re Mumpfield)*, 140 B.R. 578 (Bankr.M.D.Ala.1991); *Jones v. Vee Jay, Inc. (In re Vee Jay, Inc.)*, 104 B.R. 101 (Bankr.W.D.Ark.1987); *In re Tudor Motor Lodge Associates*, 102 B.R. 936 (Bankr. D.N.J.1989); *Federal Insurance Co. v. Horwitz*, 150 B.R. 314 (S.D.N.Y.1993).

The courts have also held that the automatic stay protects the debtor's possession of property even if the debtor has no other interest in the property. *See, e.g., Superior Propane v. Zartun (In re Zartun)*, 30 B.R. 543 (9th Cir. BAP 1983); *Emerson Quiet Kool Corp. v. Marta Group, Inc. (In re Marta Group, Inc.)*, 33 B.R. 634 (Bankr. E.D.Pa.1983).

■ Cumberland decided the debtor had no interest in the car that was protected by the automatic stay. The bankruptcy court is available to make this decision rapidly. 11 U.S.C. § 362(d) & (e). It is always a dangerous course of action for the party wanting possession to make the decision itself. Cumberland should have filed a motion to lift the stay. Cumberland clearly violated the automatic stay by taking the car from the debtor after he had filed Chapter 13. The debtor can recover damages, however, only if Cumberland willfully violated the stay. 11 U.S.C. § 362(h). Cumberland admitted knowledge of the debtor's Chapter 13 case before taking the car. Cumberland deliberately ignored the bankruptcy. This amounts to a willful violation of the automatic stay. *Walker v. Midland Mortgage*

*Co.* (*In re Medlin*), 201 B.R. 188 (Bankr. E.D.Tenn.1996). The court will schedule a hearing on the amount of damages.

■ The next question is whether Cumberland should be required to turn the car over to the debtor. Cumberland violated the automatic stay by seizing the car, and the debtor has a confirmed Chapter 13 plan that provides for him to keep the car and make payments to Cumberland under the plan. In the usual case, these facts would lead to the court to order the car turned over to the debtor. But this is not the usual case because the condition precedent was not satisfied before the debtor filed Chapter 13.

The confirmed plan is based on the theory that the debtor owes a debt for the purchase of the car. In the usual pattern of a secured sale, the buyer becomes the equitable or real owner of the vehicle; he owes a debt for the purchase price, and the debt is secured by a security interest in the vehicle. A confirmed Chapter 13 plan will usually modify the debtor's payment obligation to the secured creditor. 11 U.S.C. § 1325(a)(5). This has the effect of modifying the secured creditor's corresponding duty to release its security interest. If the debtor in this case is legally obligated to pay for the car, and the financing requirement relates only to the method of payment, then the Chapter 13 plan might be viewed as an ordinary plan that modifies the debtor's payment obligation.

The court disagrees with this theory. The financing requirement is a condition precedent to binding effect of the purchase order. It is a condition precedent to the primary obligations of Cumberland and the debtor. It is a condition precedent to Cumberland's duty to deliver the car and transfer ownership to the debtor. It is a condition precedent to the debtor's duty to pay for the car.

The execution of the retail installment contract must be considered in light of the purchase order. The retail installment contract was itself subject to the condition. It was not an obligation to pay for the car unless purchased by a bank or finance company as required by the purchase order. *Miller v. Resha,* 820 S.W.2d 357 (Tenn.1991); *Stovall v. Dattel,* 619 S.W.2d 125 (Tenn.Ct.App.1981). The debtor has no duty to pay for the car until financing is obtained.

The debtor has not pointed out any provision of the Bankruptcy Code that results in the condition precedent being removed or treated as if it has been fulfilled. The debtor's Chapter 13 plan provides for payments, but that is not the kind of financing required by the purchase order. Thus, the debtor does not owe a debt for the purchase of the car.

As a result, the facts do not fit the usual pattern of Chapter 13 plans. The court can not pigeonhole this transaction and say that Cumberland *must* have nothing more than a security interest, and the debtor *must* be the equitable owner of the car. Indeed, it appears that Cumberland is the equitable owner of the car, or at least it has greater rights than a secured creditor, and the debtor has very limited rights.

The broad definitions of claim and debt mean the debtor may owe Cumberland a debt, but it is not a debt for the purchase price of the car. 11 U.S.C. § 101(5) & (12). The court could treat the Chapter 13 plan as providing for payment of any such debts to Cumberland. Payment of those debts would not create a corresponding duty in Cumberland to complete the sale.

■ In summary, the debtor's plan attempts to deal with a debt that does not exist, or it attempts to create a debt that does not exist. A plan provision that attempts to create a debt or to deal with a debt that does not exist should be treated as meaningless. *Benford–Whiting Co. v. Robertson* (*In re Robertson*), 4 B.R. 213 (Bankr.D.Colo.1980); *see also Jauregui v. Ricci* (*In re Jauregui*), 197 B.R. 673 (Bankr.E.D.Cal.1996). (This situation should be distinguished from the one in

which someone other than the debtor owes the debt to the secured party; in that situation the debt exists, but there is no contract between the debtor and the creditor. *In re Rutledge*, 208 B.R. 624 (Bankr. E.D.N.Y.1997).)

 A confirmed chapter 13 plan is binding on a creditor whose claim is dealt with by the plan. It is res judicata as to issues that could have been raised by objecting to confirmation. 11 U.S.C. § 1327(a); *In re Rodgers*, 180 B.R. 504 (Bankr.E.D.Tenn.1995). Cumberland could have raised the condition precedent as a ground for denying confirmation. The court's reasoning may not raise any res judicata problems because the reasoning involves interpretation of the plan. In any event, Cumberland has also filed a motion to reconsider the confirmation, and the motion is still pending. *Fed. R. Bankr.P.* 9023; *Fed.R.Civ.P.* 59; *Fed. R. Bankr.P.* 9024; *Fed.R.Civ.P.* 60. It renders the confirmation order not final as to Cumberland and prevents it from having res judicata effect. *O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171 (9th Cir.1989); *State Bank of Southern Utah v. Gledhill (In re Gledhill)*, 76 F.3d 1070 (10th Cir.1996); *In re Miller*, 140 B.R. 499 (Bankr.E.D.Ark.1992).

Finally, the condition precedent also raises the question of whether the car was property the debtor could "use, sell, or lease under section 363" as required by the turnover statute. 11 U.S.C. § 542(a) & § 363.

 The party moving for turnover has the burden of proving entitlement to turnover. The debtor's right to possession or to continued possession, even if he carries out the confirmed plan, is too tenuous to justify turnover at this point. *Kentucky Co. v. Hayes (In re Hayes)*, 407 F.2d 1031 (6th Cir.1969); *Carlton, Fields, Ward, Emmanuel, Smith & Cutler v. Boyer (In re U.S.A. Diversified Products, Inc.)*, 196 B.R. 801 (N.D.Ind.1996); *Solow v. Ameri-*can Airlines, Inc. (In re Midway Airlines, Inc.), 221 B.R. 411 (Bankr.N.D.Ill.1998).

The court will enter an order in accordance with this memorandum.

This memorandum constitutes findings of fact and conclusions of law as required by *Fed. R. Bankr.P.* 7052.