**In re Patricia L. BRANAM, Debtor.**

**Dean B. Farmer, Trustee Plaintiff,**

**v.**

**Autorics, Inc., Defendant and Third–Party Plaintiff,**

**v.**

**Patricia L. Branam, Third–Party Defendant.**

Bankruptcy No. 97–30576.
Adversary No. 98–3121.

United States Bankruptcy Court,
E.D. Tennessee.

March 22, 2000.

Keith L. Edmiston, Hodges, Doughty & Carson, PLLC, Knoxville, TN, for Dean B. Farmer, Trustee.

Beth A. Dunning, Bass, Berry & Sims, PLC, Nashville, TN, for Autorics, Inc.

Sal W. Varsalona, Clinton, TN, for Patricia L. Branam.

## MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT

RICHARD S. STAIR, Jr., Chief Judge.

Dean B. Farmer, the Plaintiff and Chapter 7 Trustee, filed his Complaint on October 23, 1998, seeking to avoid the lien of the Defendant, Autorics, Inc., encumbering the 1997 Ford Ranger truck owned by the Debtor, Patricia L. Branam, under 11 U.S.C.A. § 549 (West 1993 & Supp.1999), and to recover the avoided transfer under 11 U.S.C.A. § 550(a) (West 1993 & Supp. 1999). In the alternative, the Trustee requests a money judgment for the value of the truck in the amount of $15,178.00. On January 15, 1999, the Defendant filed its Answer, Counter–Claim and Third Party Complaint seeking an order that the Debtor's payments on the loan secured by the truck, which, by agreement of the parties, were then held in trust, are property of the Defendant and should be distributed to it.[1] In addition, the Defendant seeks a

---

1. On March 10, 1999, by agreement of the parties, the court entered a Consent Order allowing Robertson, Ingram & Overbey, Attorneys, to deposit in the registry of the court funds which it held in trust, totaling $6,760.50, representing installment payments received from the Debtor from August 1997 to January 1999. Pursuant to the Consent Or-

judgment against the Debtor for amounts which it claims are currently due under the loan. The Trustee filed his answer on February 10, 1999, and the Debtor filed her answer on February 16, 1999.

On April 21, 1999, the Trustee filed an Amended Complaint by which he seeks to avoid Autorics's lien under 11 U.S.C.A. § 544 (West 1993 & Supp.1999) as well as under § 549. In addition, he asks the court to impose sanctions against Autorics under 11 U.S.C.A. § 362(h) (West 1993) for its alleged willful violation of the automatic stay in perfecting the lien at issue. Autorics filed its Answer to Amended Complaint on May 17, 1999.

The Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Summary Judgment were filed on November 15, 1999, accompanied by supporting briefs. The Trustee seeks summary judgment avoiding Autorics's lien and allowing him to recover the value of the truck. Autorics seeks summary judgment dismissing the Trustee's Amended Complaint in its entirety, declaring that the Trustee has no right in the payments made in trust, and granting a judgment against the Debtor for attorney fees and expenses incurred in this adversary proceeding. On November 29, 1999, Autorics filed its Response to Plaintiff's Motion for Summary Judgment and the Plaintiff's Response to Defendant's Motion for Summary Judgment was filed on December 6, 1999. The record consists of a Stipulation of Facts, which includes ten exhibits, filed by the Trustee and Autorics on November 15, 1999.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(G) and (K) (West 1993).

## I

Autorics and automobile dealer Ted Russell Enterprises, Inc. (the Dealer) have a continuing relationship in which Autorics purchases the Dealer's interest in retail installment sales contracts at a discounted price.[2] Autorics will purchase the Dealer's interest in a contract only after it has approved the credit of the buyer under the terms of the proposed contract.

The Debtor negotiated with the Dealer in early 1997 for the purchase of a 1997 Ford Ranger pickup truck. On January 4, 1997, the Debtor executed a Consumer Credit Sales Contract–Auto. That contract was not executed, acknowledged, or accepted by the Dealer as required. Its terms included the financing of the principal amount of $14,767.63 at an annual percentage rate of interest of 17%, with a cash down payment of $1,600.00, and sixty monthly payments of $369.61. On the same date, the Debtor executed a Supplement to Purchase Contract, which provided in a section labeled "BAILMENT AGREEMENT" that

Pending credit approval of Buyer(s) by financing institution and completion of the sales transaction, delivery of said vehicle by Dealer is hereby made to Buyer(s) as a convenience to Buyer(s) and is subject to all terms and conditions in said Sales Agreement and in the promissory note and security agreement, if any executed concurrently or in accordance therewith.

The Debtor took possession of the vehicle on January 9, 1997, and has had possession since then.

A few days after the execution of the January 4, 1997 contracts by the Debtor, the Dealer submitted financial information regarding the Debtor and a proposed codebtor to Autorics for use in its credit

der, monthly installment payments due from the Debtor after January 1999 were also to be paid into the registry account. At present, the clerk holds funds totaling $11,155.30.

2. Several of the stipulated documents name Special Finance, Inc. as the purchaser of the

Debtor's installment contract. The parties agree that Autorics and Special Finance, Inc. are wholly owned subsidiaries of NAL Acceptance Corporation and that they will be considered one entity for the purposes of this matter.

approval process. On January 7, 1997, and January 13, 1997, Autorics faxed Callback Forms to the Dealer which indicated its conditional approval of the Debtor's credit as follows, in a space designated "COMMENTS / REASONS / CONDITIONS":

PATRICIA ONLY ON DEAL. WILL CONSIDER A MAX PYMT OF $338/MO INCLUDING ALL ADDS. MUST PROVE $1,690/MO INCOME WITH YEAR–TO–DATE PAYSTUBS. SUBMIT UNIT. ALL STIPS MUST MATCH APPLICATION.

On January 31, 1997, Autorics faxed a Callback Form to the Dealer in which it reiterated the requirements set out in the previous Callback Forms and emphasized that another contract must be made because the proposed monthly payment of $369.61 was too high. All three Callback Forms state that the conditional approval was valid for thirty days.

On February 1, 1997, the Debtor executed another Consumer Credit Sales Contract–Auto which provided for financing in the principal amount of $13,211.63 at an annual percentage rate of interest of 18%, with a down payment of $2,000.00 and monthly payments of $338.00. It also provided that the Debtor was granting a security interest in the truck to the Dealer to secure her obligation. Unlike the January sales contract, this contract was executed, acknowledged, and accepted by the Dealer. On the same date the Debtor and the Dealer executed a Retail Buyers Order which identified the truck and figured the balance due after the down payment as $13,211.63, including taxes, fees and expenses. Just below the signature lines of the Retail Buyers Order is a statement that, "THIS IS NOT AN ORDER UNTIL ACCEPTED BY AN OFFICIAL OF THE COMPANY, AND CREDIT APPROVED BY A RESPONSIBLE FINANCE COMPANY AS TO ANY DEFERRED BALANCE."

Receipts from the Dealer demonstrate that the Debtor paid the down payment with a $500.00 payment on January 9, 1997, a $100.00 payment on January 21, 1997, a $400.00 payment on February 11, 1997, and a $1,000.00 payment on February 28, 1997. She filed a petition under Chapter 7 of the Bankruptcy Code on February 12, 1997.

As part of the final credit approval process, the Debtor executed an Application Statement on a Ford Credit form on March 2, 1997. The Dealer submitted the application to Autorics, which gave its final approval of the February Consumer Credit Sales Contract–Auto on March 3, 1997. On the same day, Autorics accepted assignment of the sales contract from the Dealer and paid the Dealer $11,411.63.

On March 13, 1997, the Dealer mailed an Application for Certificate of Title and Registration to the Tennessee Department of Safety. The application was executed by the Debtor as the owner on March 12, 1997, and identifies Autorics as the first lienholder. On March 20, 1997, the State of Tennessee issued a Certificate of Title identifying the Debtor as the owner and Autorics as the first lienholder.

Autorics, the Dealer, and their employees did not have actual notice and were not given verbal, written, or formal notice of the Debtor's bankruptcy until after March 20, 1997.

## II

Pursuant to the Pretrial Order entered May 5, 1999, the court must resolve the following issues:

(a) Is the Ford Ranger truck ("Truck") property of the estate under 11 U.S.C. § 541?

(b) If the Truck is property of the Estate, did the defendant have a lien in the Truck avoidable by the Trustee under 11 U.S.C. § 544?

(c) If the Truck is property of the Estate, did the defendant receive a transfer of property avoidable by the [T]rustee under 11 U.S.C. § 549?

(d) If the Trustee is otherwise entitled to a recovery and/or to avoid a lien on the Truck, does the defendant have a defense to recovery and/or lien avoidance under 11 U.S.C. § 550(b)?

(e) Did the defendant violate the automatic stay, 11 U.S.C. § 362, and, if so, is the Trustee entitled to damages under 11 U.S.C. § 362(h)?

## III

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court must grant summary judgment only if no genuine issues of material fact exist and if a party is entitled to a judgment as a matter of law. *See Hall v. Tollett,* 128 F.3d 418, 421–22 (6th Cir. 1997). In making that determination, the court must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. . . ." *Id.* (quoting FED.R.CIV.P. 56(c)). The substantive law of the underlying action will dictate which facts are material for the purposes of summary judgment. *See Gibson v. Gibson (In re Gibson),* 219 B.R. 195, 199 (6th Cir. BAP 1998) (citing *Hanover Ins. Co. v. American Eng'g Co.,* 33 F.3d 727, 730 (6th Cir.1994)). There are no material facts in dispute.

## IV

The Trustee seeks to avoid Autorics's lien under § 544 and/or § 549 of the Bankruptcy Code. Under § 544(a), the Trustee "shall have, as of the commencement of the case ... the rights and powers of, or may avoid any transfer of *property of the debtor* or any obligation incurred by the debtor that is voidable by" a judicial lien creditor, a creditor who remains unsatisfied after execution against the debtor, or a bona fide purchaser of real property from the debtor. 11 U.S.C.A. § 544(a) (West 1993) (emphasis added). Under § 549(a), the Trustee may "avoid a transfer of *property of the estate* ... that occurs

after the commencement of the case. . . ." 11 U.S.C.A. § 549(a) (West 1993) (emphasis added).

█ Section 544 applies to pre-petition transfers of property only. *See Meininger v. Harp (In re Stoops),* 209 B.R. 1, 3 (Bankr.M.D.Fla.1997) (Section 544 does not apply to post-petition transfers.); *Eisenberg v. Bank of New York (In re Sattler's, Inc.),* 73 B.R. 780, 790–91 (Bankr. S.D.N.Y.1987) (same); *Waldschmidt v. Commissioner of Internal Revenue Serv. (In re Lambdin),* 33 B.R. 11, 13 (Bankr. M.D.Tenn.1983) (same). Section 549 applies to post-petition transfers. *See* 11 U.S.C.A. § 549(a); *Sattler's, Inc.,* 73 B.R. at 791.

█ In addition, the phrase "property of the debtor" in § 544 is not interchangeable with "property of the estate" in § 549 which includes, with certain exceptions not relevant here, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1993); *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1009–10 (M.D.Tenn.1983) (finding that § 541 does not limit § 544); *see also Patel v. Rupp,* 195 B.R. 779, 782 (D.Utah 1996) (explaining that the majority of courts deciding the issue have found that the definition of "property of the estate" found in § 541(d) does not limit the operation of § 544(a)(3), collecting cases and following the majority); *Ebel v. Ebel (In re Ebel),* 144 B.R. 510, 514–15 (D.Colo.1992) (citing and following cases in the seventh, ninth and eleventh circuits adhering to the majority view). *But see, e.g., Cook v. United States (In re Earl Roggenbuck Farms, Inc.),* 51 B.R. 913, 917 (Bankr.E.D.Mich. 1985) (finding that § 541 limits the operation of § 544).

Although the determination that the truck is property of the estate is treated as a prerequisite under both § 544 and § 549 in the parties' statement of issues under the Pretrial Order, that determination is relevant only with regard to § 549. Under

both § 544 and § 549, however, the court must determine what property interests the Debtor acquired in the truck and when she acquired them. After resolving those issues, the court must then determine whether she transferred an interest to Autorics which is avoidable under § 544 or § 549.

## V

The Debtor's interest in the truck is based on the contractual agreements between the Debtor and the Dealer under the Retail Buyers Order and the Consumer Credit Sales Contract–Auto executed by the Dealer and the Debtor on February 1, 1997. The Retail Buyers Order includes the condition that "THIS IS NOT AN ORDER UNTIL ACCEPTED BY AN OFFICIAL OF THE COMPANY, AND CREDIT APPROVED BY A RESPONSIBLE FINANCE COMPANY AS TO ANY DEFERRED BALANCE." The Consumer Credit Sales Contract–Auto does not include that condition, a point upon which the Plaintiff relies.

 Nonetheless, the two contracts may be construed together as contemporaneous contracts. The construction of contemporaneous contracts has been explained as follows:

> Generally, absent evidence to the contrary, instruments executed contemporaneously with commonality of parties, purpose, and transaction will be construed together in the eyes of the law as one contract. Construing contemporaneous instruments together simply means that if there are any provisions of one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect as between the parties; and others charged with notice, so that the intent of the parties may be carried out.

*Pyramid Operating Auth., Inc. v. City of Memphis (In re Pyramid Operating Auth., Inc.)*, 144 B.R. 795, 814 (Bankr. W.D.Tenn.1992) (citing *Joy v. City of St. Louis*, 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843 (1891)).

There is no evidence that the two contracts, which were executed on the same day and share a commonality of parties and transaction, were not meant to be construed together. The condition in the Retail Buyers Order that the Debtor's credit be approved by a finance company applies to the February 1, 1997 Consumer Credit Sales Contract–Auto.

Autorics approved the Debtor's credit application on March 3, 1997, after the commencement of her case on February 12, 1997. The Trustee argues that the conditions of the contracts were met by the execution of the revised sales contract on February 1, 1997.[3] The Trustee's argument is without merit because the requirements listed in the Callback Forms were not fully met on February 1, 1997, or before the commencement of the Debtor's case on February 12, 1997. The temporary credit approvals were conditioned on the reduction of the Debtor's monthly payment and her proof of a minimum income. Although the February 1, 1997 contracts met the requirement regarding the amount of monthly payments, there is no evidence that the Debtor met the other requirement by furnishing proof of her income at that time. The Debtor did not submit her credit application statement, which included income information, until March 2, 1997, after the commencement of her case.

The condition of the Retail Buyers Order and Consumer Credit Sales Contract–Auto that the Debtor's credit be approved by a finance company was not satisfied until March 3, 1997, when Autorics gave its final approval.

---

**3.** That argument assumes that meeting the conditions of the temporary credit approvals contained in the January Callback Forms would satisfy the condition of credit approval, regardless of whether Autorics gave the Debtor its credit approval as required in the Retail Buyers Order.

## VI

■ The condition in the contracts was not met until after the Debtor commenced her case. Therefore, the court must now determine what interest the Debtor had under the contracts absent the satisfaction of the condition. Similar facts faced the district court in *Weaver v. Ford Motor Credit Co. (In re McFarland)*, 131 B.R. 627, 628–29 (E.D.Tenn.1990), *aff'd*, 943 F.2d 52 (6th Cir.1991), in its reversal of *Weaver v. Ford Motor Credit Co. (In re McFarland)*, 112 B.R. 906 (Bankr. E.D.Tenn.1990), a decision out of this court. In *McFarland*, the debtors executed a buyer's option to purchase two automobiles. *See McFarland*, 131 B.R. at 628. In addition, the debtors and an automobile dealership executed a retail installment sales contract which included the debtors' grant of a security interest in the vehicles. *See id.* at 628–29. The contracts were conditioned upon the approval of the debtors' credit by the financing company to which the installment contract was eventually assigned. *See id.* at 628. Approval of the debtors' credit did not occur until days after the contracts were executed. *See id.* at 630. After the approval, the certificate of title applications were submitted, and a week later, the debtors commenced their case in bankruptcy. *See id.* at 629. The debtors had possessed the automobiles without driving limitations or mileage restrictions from the date that they had executed the contracts. *See id.* Their possession was not authorized under the contracts and they were required to return the vehicles if their credit was not approved. *See id.*

The district court had to determine when the debtors had transferred an interest in the vehicles to the financing company for the purposes of 11 U.S.C.A. § 547. *See id.* at 630. To do so it had to determine what property interests the debtors had in the vehicles and at what times. *See id.* at 631–33. It determined that although the debtors had executed the contracts, including grants of security interests, the contracts were not binding on the parties until the contracts' conditions were met. *See id.* at 632–33. The court explained that " '[a] conditional contract is a contract whose very existence and performance depends upon the happening of some contingency or condition expressly stated therein....' " *Id.* at 632 (quoting *Covington v. Robinson*, 723 S.W.2d 643, 645 (Tenn.Ct. App.1986)); *see also General Motors Acceptance Corp. v. Third Nat'l Bank*, 812 S.W.2d 593, 595 (Tenn.Ct.App.1991) ("[N]oncompliance with a condition precedent will prevent the formation of a contract."). It concluded that until the condition was performed, the contracts granting the security interests had "not fully come into existence" and the debtors could not have transferred an interest to the financing company because they did not have sufficient rights in the collateral. *See id.* at 633. At most, the court determined, the debtors had possessory rights in the automobiles. *See id.* at 632.

The Trustee attempts to distinguish *McFarland* on the ground that its ultimate issue was whether the granting of a security interest pre-petition constituted a preferential transfer under § 547, arguing that the issues here concern § 544 and § 549 and whether the Debtor's truck is property of the estate. *McFarland*, however, is instructive because there, as here, the court was required to make the initial determinations of when the conditional contract came into existence and what interest the debtor had in the collateral prior to that time. *See id.* at 631–33.

Here, the condition that the Debtor's credit be approved by a financing company was not met until March 3, 1997, after the commencement of the Debtor's case on February 12, 1997. As a result, the Debtor did not have an interest in the truck, other than a possessory interest, until March 3, 1997, the date the condition governing the Debtor's purchase of the truck under the February 1, 1997 Retail Buyers Order and Consumer Credit Sales Contract–Auto was satisfied. Those condi-

tions, including the Debtor's transfer of the security interest in the truck, were not satisfied until after the Debtor filed her petition. Because § 544 applies to pre-petition transfers only, the Trustee may not avoid Autorics's lien in the truck under § 544.[4]

## VII

■ The court must next determine whether Autorics received a transfer of property of the estate that the Trustee can avoid under § 549. Property of the estate is broad in scope and consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1); *Demczyk v. Mutual Life Ins. Co. (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997) ("The scope of section 541(a)(1) is broad, includes tangible and intangible property, and allows the bankruptcy trustee to regain possession of property in which the debtor had equitable as well as legal title.") (quoting *United States v. Whiting Pools*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313 n. 8, 2314, 76 L.Ed.2d 515 (1983)). Thus, the court must first determine what interest the Debtor had in the truck when she filed her petition.

In *McFarland*, the court concluded that before the condition of the contracts at issue was satisfied, the debtor had only a possessory interest in the automobiles. *See id.* at 631–32. In *Skinner v. Cumberland Auto Center (In re Skinner)*, 238 B.R. 120, 122–24 (Bankr.M.D.Tenn.1999), another court was confronted with a debtor who executed a buyers order and retail installment sales contract which were con-

ditioned upon the credit approval from the financing company. The condition had not been met when the debtor filed his petition. *See Skinner*, 238 B.R. at 123. The debtor possessed the vehicle from the execution of the contracts until the dealer retrieved it after the debtor filed his petition. *See id.* At issue was whether the dealer violated the automatic stay, specifically 11 U.S.C.A. § 362(a)(3) (West 1993 & Supp.1999), by taking the vehicle back. *See id.* at 122. Because the protection provided under § 362(a)(3) applies only to property of the estate, the court had to determine what interest the debtor had in the vehicle at the commencement of his case. *See id.* at 124.

Citing *McFarland*, the court determined that the contract had not become binding on the parties because the contract's condition had not been met. *See id.* at 125. It found that the dealer was "the equitable owner of the car, or at least it [had] greater rights than a secured creditor, and that the debtor [had] very limited rights." *Id.* The court concluded that the debtor's right to "possession of the car pursuant to his contract" with the dealer became property of the estate. *See id.* at 124.[5]

In the present matter, the Debtor had possession of the truck when she filed her petition on February 12, 1997.[6] She did not own the truck until March 3, 1997, when Autorics approved her credit and the conditional sales contract became binding on the parties. *See McFarland*, 131 B.R. at 632–33; *Skinner*, 238 B.R. at 125.

■ Generally, property that a debtor acquires post-petition is not property of

---

**4.** *See supra,* at 444 (Section 544 applies to pre-petition transfers only.).

**5.** The court also found that the debtor's contract with the dealer "still allowed the opportunity to obtain financing and complete the deal" and that the "debtor's rights under the purchase order came into the bankruptcy estate." *Skinner,* 238 B.R. at 124.

**6.** The Debtor was permitted to take possession of the truck under the terms of the Sup-

plement to Purchase Contract which was executed contemporaneously with the abandoned January 4, 1997 Consumer Credit Sales Contract–Auto. The Trustee maintains that the Supplement to Purchase Contract was no longer enforceable after the execution of the February 1, 1997 Consumer Credit Sales Contract–Auto which was not accompanied by a new Supplement to Purchase Contract. Thus, under the Trustee's position, the Debtor's possession of the truck was not supported by contract when she filed her petition.

the estate.[7] *See* 5 KING, COLLIER ON BANK-RUPTCY ¶ 541.03, at 541–9 to –10 (15th ed. rev.1999) ("In general, property of an individual not [owned at the filing of the petition] but subsequently acquired by the debtor does not become property of the estate, but rather, becomes the debtor's personal property, clear of all claims that are ultimately discharged in the bankruptcy case.") (citing *Tennessee Valley Authority v. Kinzer*, 142 F.2d 833, 838 (6th Cir. 1944) (Debtor's vacation pay and interest in retirement contribution, to which he was not entitled and had not earned until after filing his petition, were not property of the estate.)).

At the commencement of the Debtor's bankruptcy case, she had only a possessory interest in the truck. She did not acquire the truck until after she filed her petition and therefore it did not become property of the estate.[8] Accordingly, the Trustee may not avoid Autorics's lien under § 549 because that section applies to property of the estate only.

Because the truck is not property of the estate and Autorics's lien is not avoidable by the Trustee under § 544 or § 549 and the Trustee asserts no other claim to the truck, the Trustee is not entitled to recover the value of the truck under § 550 and is not entitled to the payments made in trust by the Debtor under the Consumer Credit Sales Contract–Auto.

## VIII

■ The Trustee asks the court to find that Autorics violated the automatic stay provisions of 11 U.S.C.A. § 362(a)(4) (West 1993 & Supp.1999) by attempting to perfect its security interest in the Debtor's truck after the filing of her petition and that it did so willfully under § 362(h). The protection of the automatic stay provided in § 362(a)(4) extends only to property of the estate. *See* 11 U.S.C.A. § 362(a)(4) (staying "any act to create, perfect, or enforce any lien against property of the estate"). Autorics's perfection of its security interest in the truck could not have violated § 362(a)(4) because the truck is not property of the estate.

## IX

■ Autorics also requests summary judgment against the Debtor for attorney fees and expenses which it incurred in this matter.[9] Having determined that Autorics's claim against the Debtor arose after she commenced her bankruptcy case, the court finds that it has no jurisdiction over Autorics's third-party action.

Section 1334 of title 28 of the United States Code enacts in material part that the district court has jurisdiction over four types of matters: (1) "cases under title 11"; (2) "proceedings arising under title 11"; (3) proceedings "arising in" a case under title 11; and (4) proceedings "related to" a case under title 11. 28 U.S.C.A. § 1334(b) (West 1993).[10] The court finds it unnecessary to analyze § 1334(b) and the extent to which the bankruptcy judge may exercise that jurisdiction under 28 U.S.C.A. § 157(b), (c) (West 1993). *See Cumberland River Coal Co. v. United*

7. Specific exceptions to the general rule, not applicable, here, are enumerated at 11 U.S.C.A. §§ 541(a)(5), (6), (7) and 1306(a) (West 1993).

8. The Trustee argues that a debtor who possesses collateral under a contract has rights in the collateral and is able to grant a security interest in it, citing *Thrift, Inc. v. A.D.E., Inc.*, 454 N.E.2d 878 (Ind.Ct.App.1983). The Debtor's ability to grant a security interest is academic because the truck did not acquire its status as collateral until after commencement of the Debtor's case.

9. Autorics did not request summary judgment against the Debtor for "the remaining amount that is currently due and owing under the Retail Installment Contract and that has not heretofore been paid into trust" which it requested in its third party complaint.

10. The extent to which bankruptcy judges may hear and finally decide core and non-core proceedings referred by the district court pursuant to 28 U.S.C.A. § 157(a) (West 1993) is governed by 28 U.S.C.A. § 157(b), (c) (West 1993).

States (In re Blue Diamond Coal Co.), 163 B.R. 798, 805–09 (Bankr.E.D.Tenn.1994) (discussing bankruptcy court's subject matter jurisdiction).

Autorics's claim against the Debtor is not a core proceeding nor does it arise in or is it related to a case under title 11. Autorics's third-party complaint will be dismissed for lack of subject-matter jurisdiction.

## X

In summary, the condition of the contracts under which the Debtor purchased her 1997 Ford Ranger truck and granted a security interest to Autorics was not met until after the commencement of the Debtor's bankruptcy case. As a result, the transfer of the security interest was not a prepetition transfer and cannot be avoided by the Trustee under 11 U.S.C.A. § 544. In addition, the Debtor did not own the truck until the contract came into existence after filing her petition. As a result, the truck is not property of the estate and the Trustee cannot avoid Autorics's lien under 11 U.S.C.A. § 549. Accordingly, the Trustee is not entitled to recover the truck or its value under 11 U.S.C.A. § 550(a) nor is he entitled to payments made by the Debtor under the Consumer Credit Sales Contract–Auto. Furthermore, Autorics did not violate 11 U.S.C.A. § 362(a)(4) by perfecting its security interest in the truck because the truck was not property of the estate at the commencement of the Debtor's bankruptcy case.

Pursuant to the Consent Order entered on March 10, 1999,[11] the clerk is presently holding the sum of $11,155.30, all of which the court will direct be paid to Autorics to apply in satisfaction of the Debtor's obligation under the February 1, 1997 Consumer Credit Sales Contract–Auto.[12]

11. See supra note 1.

12. The Consent Order did not direct that these funds be held in an interest-bearing account.