**In re Catherine L. PRINTUP, a/k/a Catherine Flowers, a/k/a Katie Printup, a/k/a Catherine Holland, Debtor.**

**No. 00–33898.**

United States Bankruptcy Court,
E.D. Tennessee.

May 23, 2001.

James M. Crain, Knoxville, TN, for Debtor.

Bailey, Roberts & Bailey, P.L.L.C., N. David Roberts, Jr., Knoxville, TN, for Bank One.

Gentry, Tipton, Kizer & McLemore, P.C., Maurice K. Guinn, Knoxville, TN, for Stewart Investigations & Recovery, Inc.

### MEMORANDUM ON DEBTOR'S MOTION FOR SANCTIONS

RICHARD S. STAIR, Jr., Bankruptcy Judge.

On December 21, 2000, the Debtor filed a Motion for Sanctions against Bank One and/or Valley National Financial Service Company, Inc. (Valley National)[1] seeking damages, sanctions, and the return of a 1997 Chrysler LHS (and personal property contained therein) allegedly repossessed in violation of the automatic stay of 11 U.S.C.A. § 362 (West 1993 & Supp.2000). An Amended Motion for Sanctions adding Stewart Investigations & Recovery, Inc. (Stewart) as a respondent was filed by the Debtor on January 5, 2001.[2] A trial was held on May 14, 2001.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(E), (O) (West 1993).

### I

The Debtor filed her Chapter 7 Petition on September 27, 2000, and subsequently filed her required statements and schedules on October 16, 2000. She listed the Chrysler as her personal property worth $17,550.00, securing an $18,646.54 claim of Valley National.

The Chrysler was purchased on February 28, 1998, from Harry Lane Chrysler Plymouth in Knoxville by the Debtor's estranged husband, Duane Printup. The Retail Installment Contract and Purchase Money Security Agreement (Sales Contract), signed solely by Mr. Printup, was assigned to Valley National which subsequently assigned it to Bank One. The Sales Contract provides that it is not assignable by Mr. Printup without Valley National's written consent. The Sales Contract also provides that Mr. Printup shall not "sell or permit the property to be permanently removed from the State of Tennessee without the prior written consent" of the note holder and that Mr. Printup shall not "permit the property to be removed from [his] possession."

Although her name is not on the Sales Contract or Certificate of Title, the Debtor claims equitable title to the Chrysler, asserting that: (1) it was purchased for her use; (2) she was responsible for taking the car in for servicing and for contacting Valley National and Bank One when necessary; and (3) car payments were made out of the Printups' joint checking account. The Used Vehicle Buyer's Order prepared prior to the car's purchase lists both the Debtor and Mr. Printup as buyers of the Chrysler and is signed by both the Debtor and Mr. Printup. Additionally, the Debtor's two daughters testified that the vehicle was driven almost exclusively by the Debtor.[3]

The Debtor acknowledges that she was living in Tennessee on the date of the

---

**1.** The Debtor's claim is solely against Bank One, the assignee of Valley National. References to Valley National in this Memorandum are therefore deemed references to Bank One.

**2.** At trial, the Debtor's counsel advised the court that an agreed order would be tendered

dismissing Stewart from this contested matter.

**3.** Mr. Printup did not appear as a witness. Both parties, however, offered evidence of his out-of-court statements regarding the Chrysler's ownership. For example, through her own testimony and through the testimony of

Chrysler's purchase in violation of a Florida probation order directing her to remain in that state. The Debtor further testified that she and her husband intentionally left her name off of the Sales Contract and Certificate of Title for the sole purpose of avoiding detection by the Florida authorities.[4]

As of December 2000, the payments on the Chrysler were approximately $5,070.00 in arrears.[5] On December 15, 2000, counsel for the Debtor contacted Bank One to advise that the Debtor was in bankruptcy and that she claimed ownership of the Chrysler. During this conversation, the Debtor's counsel expressed the Debtor's willingness to reaffirm the Chrysler debt. The Debtor's counsel also provided the address at which the car was currently located.

On December 19, 2000, pursuant to Bank One's instructions, Stewart repossessed the Chrysler. Bank One states that it authorized the repossession, despite its knowledge of the Debtor's bankruptcy and her claim of ownership, because its

files indicated that the Debtor had no actual ownership interest in the car.

Contained within the Chrysler at the time it was repossessed were clothing and other personal property belonging to the Debtor and one of her daughters. These items were retained by Stewart until February 23, 2001. With the exception of goods acquired postpetition and her daughter's property, all of the Chrysler's contents were claimed as exempt on her Schedule C filed October 16, 2000, and on her Amended Schedule C filed December 1, 2000. The Debtor asserts that some of these items were lost or destroyed and seeks damages for their replacement, along with lost wages, alternate transportation costs, attorney's fees, and emotional distress and punitive damages.

## II

■ Section 362(a) of the Bankruptcy Code establishes an automatic stay of, among other things:

(3) any act to obtain possession of property of the estate or of property from

---

her daughters, the Debtor introduced Mr. Printup's alleged statements supporting her contention that the car was a gift. Each of these statements is hearsay. *See* FED. R. EVID 801(c). The Debtor argues that these out-of-court declarations should be admitted nonetheless as statements against interest, a recognized exception to the hearsay rule. *See* FED. R. EVID. 804(b)(3). That exception, however, is inapplicable to Mr. Printup because it concerns only those declarants who are "unavailable" to testify. *See* FED. R. EVID. 804(b). The Debtor failed to demonstrate that Mr. Printup is in fact "unavailable" as that term is defined by FED. R. EVID. 804(a).

Conversely, Bank One offered excerpts of its business records to show that Mr. Printup both authorized the repossession and claimed that the Debtor had stolen the car. This evidence (a memorandum of a declarant's out-of-court statement) is hearsay within hearsay and is excluded absent an exception for each level of hearsay contained in the

statement. *See* FED. R. EVID. 805. Bank One successfully laid a foundation to bring in the record itself under the business records exception of FED. R. EVID. 803(6). Mr. Printup's statements within that business record, however, remain hearsay unforgiven by any hearsay exception.

Accordingly, all out-of-court statements of Duane Printup offered by the parties are inadmissible pursuant to FED. R. EVID. 802 and have not been considered by the court in reaching its decision.

4. The Debtor was eventually located by the state of Florida and was incarcerated from May through September 2000.

5. Additionally, throughout discovery and at trial, the Debtor was unable to produce proof of insurance of the Chrysler. The Debtor further testified that she was driving the Chrysler without a valid driver's license prior to its repossession.

the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate[.]

11 U.S.C.A. § 362(a)(3)-(4) (West 1993 & Supp.2000). The automatic stay arises by operation of law upon the filing of a debtor's petition and binds those with knowledge of the bankruptcy until the stay is properly lifted. *See NLT Computer Servs. Corp. v. Capital Computer Sys., Inc.,* 755 F.2d 1253, 1258 (6th Cir.1985). The main purposes of the automatic stay are to provide the debtor a "breathing spell" from collection efforts and to shield individual creditors from the effects of a "race to the courthouse," thereby promoting the equal treatment of creditors. *See In re Southwest Equip. Rental, Inc.,* No. 1–88–00033, 1990 WL 129972, at *3 (Bankr.E.D.Tenn. Feb.8, 1990).

■ An individual harmed by "any willful violation of [the automatic stay] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.A. § 362(h) (West 1993). A violation is willful if "the creditor deliberately carried out the prohibited act with knowledge of the debtor's bankruptcy case." *Walker v. Midland Mortgage Co. (In re Medlin),* 201 B.R. 188, 194 (Bankr. E.D.Tenn.1996). The level of culpability necessary for a "willful" violation of the stay has been summarized as follows:

A specific intent to violate the stay is not required, or even an awareness by the creditor that her conduct violates the stay. It is sufficient that the creditor knows of the bankruptcy and engages in deliberate conduct that, it so happens, is a violation of the stay. Moreover, where there is actual notice of the bankruptcy it must be presumed that the violation was deliberate or intentional.

Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages.

*In re Daniels,* 206 B.R. 444, 445 (Bankr. E.D.Mich.1997) (internal citations and quotations omitted). "[G]ood faith is not a defense and is irrelevant to liability." *Id.* at 446.

### III

■ Whether violations of the automatic stay occurred in the present case depends upon whether the Chrysler, or at least a possessory interest therein, is property of the estate. *See* 11 U.S.C.A. § 362(a). "Property of the estate" is defined in material part at Bankruptcy Code § 541(a) to include:

(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C.A. § 541(a)(1) (West 1993). Courts should look to state law to determine the property rights included in a debtor's bankruptcy estate. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979).

■ In Tennessee, a certificate of title is not conclusive evidence of automobile ownership. *See Smith v. Smith,* 650 S.W.2d 54, 56 (Tenn.Ct.App.1983); *see also Brown v. Riley (In re Omni Mechanical Contractors, Inc.),* 114 B.R. 518, 529 (Bankr.E.D.Tenn.1990). The intention of the parties, rather than the certificate of title, determines property rights in a vehicle. *See Smith,* 650 S.W.2d at 56; *see also Norwood v. Crabtree (In re Crabtree),* 39 B.R. 713, 715 (Bankr.E.D.Tenn.1984). "[A] valid transfer of ownership of an automobile does not depend on compliance with the motor vehicle title laws, which were designed to deter trafficking in stolen cars." *Smith,* 650 S.W.2d at 56.

■ The court cannot find that the Debtor had a property interest in the Chrysler. The testimony offered by the Debtor does not persuade the court that she in fact has equitable title to the Chrysler by gift. Additionally, her lack of involvement, at least in the year 2000, in making car payments and maintaining insurance, along with her apparent apathy toward whether either of these responsibilities was being met, belie the argument that she was a co-purchaser of the vehicle. Perhaps most importantly, although the Debtor contends that the car would have been titled in her name had she not been trying to conceal her whereabouts from the probation authorities, that contention by its very nature places the Debtor's credibility in grave doubt.

However, by virtue of the length of time the car remained in the Debtor's possession after her separation from Mr. Printup, the court finds that the Debtor had at least a possessory interest in the car. It is unlikely that Mr. Printup would not have reclaimed the Chrysler, especially during the Debtor's four-month incarceration, if he had not at least given the Debtor permission to use and possess the vehicle.

■ Most possessory interests are within the bundle of rights encompassing the property of the estate and are entitled to the protection of the automatic stay. *See Skinner v. Cumberland Auto Ctr. (In re Skinner)*, 238 B.R. 120, 124 (Bankr. M.D.Tenn.1999) ("[T]he automatic stay protects the debtor's possession of property even if the debtor has no other interest in the property."); *see also Arango v. Third Nat'l Bank (In re Arango)*, 992 F.2d 611, 614 (6th Cir.1993) (possessory interest in entireties property is property of the estate); *Convenient Food Mart No. 144, Inc. v. Convenient Indus. of Am., Inc. (In re Convenient Food Mart No. 144, Inc.)*, 968 F.2d 592, 594 (6th Cir.1992) (tenancy

at sufferance is a possessory interest that becomes property of the estate). As explained by the bankruptcy court for the Western District of Michigan, to be protected by the automatic stay such a possessory interest generally need only be lawful:

> [M]ere possession alone would not necessarily give rise to a property interest cognizable under § 541 of the Bankruptcy Code. In explaining the scope of § 541(a)(1)'s definition of property, Congress used the term "possessory interest," not "possession". *See* S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), 1978 U.S.C.C.A.N. 5787, 5868. A possessory interest is a "[r]ight to possess property by virtue of an interest created in the property though it need not be accompanied by title …." BLACK'S LAW DICTIONARY 607 (5th ed.1983). When read against the backdrop of § 541(a)(1), which refers to equitable interests, this court concludes that a possessory interest refers to cases in which the debtor has some *right* to possess the property, for example, by virtue of the title holder's consent or permission. Thus, a thief, who could have bald possession of property, without any corresponding right to possession, likely would be unable to use § 541 to claim that the stolen property constitutes property of the estate because he lacks a legal or equitable interest.

*In re Sielaff*, 164 B.R. 560, 567 n. 7 (Bankr. W.D.Mich.1994) (emphasis in original).

As noted, the court finds that the Debtor had a lawful possessory interest in the Chrysler on the date she filed her bankruptcy petition. That interest, but not the Chrysler itself, became property of the estate and was protected by the automatic stay. *See Skinner*, 238 B.R. at 124; *Sielaff*, 164 B.R. at 567 n. 7. The repossession thus violated the stay by "exercising con-

trol" over the Debtor's possessory interest. *See* 11 U.S.C.A. § 362(a)(3). Additionally, by ordering the repossession, Bank One willfully violated the stay because with knowledge of the Debtor's bankruptcy it engaged in deliberate conduct that "happened to violate" the stay. *See In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D.Mich.1997).

■ The seizure and retention of the Chrysler's contents, however, were not violations of the stay. The Debtor does not dispute that the retained property owned by her prepetition was claimed as exempt. The other personalty contained in the car was either acquired by the Debtor postpetition or was the property of the Debtor's daughter.[6]

■ Items claimed as exempt remain property of the estate protected by the automatic stay only until the deadline passes for filing an objection to the exemption. *See In re Stinson*, 221 B.R. 726, 729–30 (Bankr.E.D.Mich.1998); *In re Briggs*, 143 B.R. 438, 447–48 (Bankr. E.D.Mich.1992). Rule 4003(b) of the Federal Rules of Bankruptcy Procedure sets the relevant objection deadline, providing in material part:

> A party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

FED. R. BANKR. P. 4003(b).

The Debtor's § 341(a) meeting took place on October 31, 2000. No motion was submitted by any party in interest seeking an extension of time for filing objections. An Amended Schedule C was filed on December 1, 2000, one day after the deadline for objecting to the Debtor's original exemptions. The Amended Schedule C did not alter the Debtor's claimed exemptions in clothing or household items. The clothing and household items contained in the Chrysler therefore ceased to be property of the estate upon the passing of the Rule 4003(b) deadline on November 30, 2000, and were not brought back into the estate by the subsequent Amended Schedule C. *See In re Grantham*, 256 B.R. 262, 263–64 (Bankr.M.D.Tenn.1999) ("The time for objections to the original claims is not reopened by amendment."). Stewart seized the Debtor's personal items on December 19, 2000, well after those items ceased to be property of the estate. *See Stinson*, 221 B.R. at 729–30; *Briggs*, 143 B.R. at 447–48. Because the Chrysler's contents were not property of the estate, the automatic stay was therefore not violated by their seizure and retention.

**IV**

■ In summary, the court finds that Bank One violated the automatic stay by its interference with the Debtor's possessory interest in the Chrysler, but not by the seizure and retention of the personal items retained therein. In certain cases, however, the court may retroactively annul the automatic stay on equitable grounds. *See Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993).[7]

---

**6.** The Debtor does not argue that these items were ever property of the estate.

**7.** Section 362(d) directs that the stay may be annulled "[o]n request of a party in interest and after notice and a hearing." Although

Bank One has not formally requested stay relief, "the case law establishes that a court may modify [or annul] the stay sua sponte when the circumstances deem it necessary." *Beneficial Nat'l Bank USA v. Best Receptions*

 The protections of the automatic stay should be unavailable to a debtor if (a) the debtor unreasonably withheld notice of the stay and the creditor would be prejudiced were the debtor allowed to use the stay as a defense, or (b) if "the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *Easley*, 990 F.2d at 911. While these exceptions "must be applied sparingly," *see Smith v. First Am. Bank, N.A. (In re Smith)*, 876 F.2d 524, 527 (6th Cir.1989), retroactive annulment of the stay is warranted by the facts of this case.

The Debtor clearly testified that she did not want the Chrysler titled in her name solely to conceal her whereabouts from the Florida criminal justice system. Because of this deception, Bank One's records contained no indication of any interest or liability of the Debtor, leading in turn to the repossession presently at issue. Moreover, the Debtor in effect continued to disavow ownership by neglecting to meet the most basic obligations of an automobile owner: making car payments, maintaining insurance, and holding a valid driver's license.

The Debtor, in short, has chosen to alternately deny and claim ownership of the Chrysler depending on which position best serves her evolving legal needs. The court will not countenance such behavior. Bank One's technical violation of the automatic stay and any adversity that the Debtor may have endured following the repossession flow directly from the Debtor's decision to conceal her purported interest in the Chrysler. The Debtor will not now be permitted to "use the stay unfairly as a shield" to escape the unfavorable consequences of her own duplicitous conduct. *Easley*, 990 F.2d at 911.

*Sys., Inc. (In re Best Reception Sys., Inc.)*, 220

The Debtor's Motion for Sanctions against Bank One, as amended by her Amended Motion for Sanctions, will accordingly be denied. An order consistent with this opinion will be entered.

### ORDER

For the reasons stated in the Memorandum on Debtor's Motion for Sanctions filed this date, the court directs the following:

1. The Debtor's Motion for Sanctions filed December 21, 2000, against Bank One seeking damages, sanctions, and the return of a 1997 Chrysler LHS, as amended by an Amended Motion for Sanctions filed January 5, 2001, is DENIED.

2. The automatic stay of 11 U.S.C.A. § 362(a)(3), (4) (West 1993) is annulled as to all postpetition actions taken by Bank One to repossess and dispose of the 1997 Chrysler LHS in possession of the Debtor at the commencement of her Chapter 7 bankruptcy case.

SO ORDERED.

B.R. 932, 958 n. 43 (Bankr.E.D.Tenn.1998).